**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2005 AUG 30 PM 12 46

BY _____ CLERK
DEPUTY CLERK

Angelo Karagelidis,          *
Petitioner,                  *
                             *
    vs.                      *     Civil No.    2:05-cv-233
                             *
                             *     ~~Criminal No.~~
U.S. Department of Justice   *
Respondent,                  *

---

## PETITIONER'S MOTION TO CORRECT AND OR MODIFY THE JUDGMENT OF CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2241

---

Now Comes Angelo Karagelidis, proceeding *in propria persona*, in the above styled action and numbered cause, to be referred herein after as "Petitioner," respectfully moving this most honorable court with his particularized motion to correct and/or modify the judgment of conviction and sentence, pursuant to the provisions of 28 U.S.C. § 2241. This Court has jurisdiction over this action under 28 U.S.C. § 2241, as the Administrative Remedy process within the Federal Bureau of Prisons ("FBOP"), the petitioner's active custodian, has been exhausted, and because the manner in which petitioner's sentence is being carried out is in violation of the constitution and laws of the United States.[1] The petitioner invokes jurisdiction of this Court pursuant to 28 U.S.C. § 1331, in that the action arises out of the Constitution and laws of the United States, and seeks corrective action that was refused by officer's and employees of the United States in their official capacity. In support of this motion for relief the petitioner hereby avers as follows:

---

[1] A petition for a writ of habeas corpus under 28 U.S.C. § 2241 is appropriate "where petitioner challenges the affect of events 'subsequent' to his sentence." Gomori v. Arnold, 533 F. 2d 871 (3d Cir. 1976). Section 2241 claims are thus distinct from those available under section 2255 (which involve the validity of a sentence or the conviction pursuant to which it was imposed).

## **PROCEDURAL BACKGROUND**

On or about February 2, 2000, a criminal complaint and supporting affidavit were filed in the United States District Court located in Burlington, Vermont, charging that on or about September 1, 1999 through October 1, 1999, in the District of Vermont, the Petitioner and a co-defendant, did unlawfully conspire to import a Schedule I controlled substance and did conspire to distribute a controlled substance in violation of 21 U.S.C. § § 963 and 841. On or about February 3, 2000, United States Customs agents arrested petitioner at his residence, and subsequent to the arrest he made an initial appearance to the complaint in the United States District Court for the District of Massachusetts.

On or about February 11, 2000, a federal grand jury sitting in the United States District Court in Burlington, Vermont returned a two-count indictment. Count one charged that from on or about October 1, 1999, in the District of Vermont and elsewhere, the defendant's Angelo Karagelidis, Jason Willett and others known and unknown, did knowingly and intentionally conspire to import into the United States 3, 4 methylene-dioxymethamphetamine, also known as Ecstasy, a schedule I controlled substance in violation of 21 U.S.C. § 963. Count two charges that from on or about September 20, 1999 to on or about October 1, 1999, in the District of Vermont and elsewhere, the defendant's and others did knowingly and intentionally conspire to possess with intent to distribute 3, 4 methylenedioxymethamphetamine, also known as Ecstasy, a Schedule I controlled substance, in violation of 21 U.S.C. § 846.

On or about February 17, 2000, petitioner appeared in the United States District Court in Burlington Vermont, for arraignment, and entered a not guilty plea to the indictment. The Petitioner was ordered released on a Twenty-Five Thousand ($25,000) dollar cash bond, with conditions. The government filed a motion appealing the release order subsequent to the detention hearing, at which time petitioner was ordered detained pending a hearing set for March 1, 2000. On at the March 1, 2000 hearing petitioner was ordered detained pending trial.

On or about May 17, 2000, a federal grand jury sitting in Burlington, Vermont returned a superceding indictment against petitioner adding additional defendants and charging in Count one of the superceding indictment, that from in or about September 1999, to in or about March 2000, in the District of Vermont and elsewhere, the defendants and others known and unknown, did knowingly and intentionally conspire to import into the United States 3, 4 methylenedioxymethamphetamine, also known as MDMA or Ecstasy, a Schedule I controlled substance, in violation of 21 U.S.C. § 963. Count two charges that from in or about September 1999 to in or about March 2000, in the District of Vermont and elsewhere, the defendant and others known and unknown, did knowingly and intentionally conspire to distribute 3, 4 methylene-dioxymethamphetamine, also known as MDMA or Ecstasy, a Schedule I controlled substance in violation of 21 U.S.C. § 846. Petitioner appeared on or about May 26, 2000, before the Magistrate Judge for arraignment and entered a not guilty plea to the superceding indictment.

On or about January 12, 2001, the petitioner appeared in the United States District Court located in Burlington, Vermont and entered a guilty plea to Count Two of the superceding indictment, charging him with conspiracy to distribute Ecstasy, in violation of 21 U.S.C. § 846. In exchange for his guilty plea, and pursuant to a memorandum of agreement filed with the court on the above mentioned date, the government agreed to: "(a) move to dismiss the remaining count(s) of the superceding indictment at the time of sentencing; (b) not prosecute the defendant in the District of Vermont for any other criminal offenses known to the United States Attorney's office as of the date of the signing of the plea agreement, committed by the defendant in the District of Vermont, relative to conspiracy to distribute Ecstasy, conspiracy to escape a federal detention facility and violations of federal firearms laws; and (c) recommend to the sentencing court that he be sentenced to a term of imprisonment at the low end of the sentencing guidelines range applied by the Court imposing the sentence.

A pre-sentence investigation report ("P.S.R.") was prepared by the U.S. Probation Department, asserting the following:

"Based on a preponderance of the evidence, the transactions listed above, support a finding that the offense involved approximately 311,200 Ecstasy pills. 311,200 pills x .24 grams per pill yield a total weight of 74, 688 grams of Ecstasy. 74,688 x 35 (marijuana equivalency conversion per § 2D1.1) = the equivalency of 2,614,080 grams, or 2,614.08 kilograms of marijuana ..."[2]

"...On March 2, 2001 [well after petitioner entered a guilty plea, on January 12, 2001 to Count Two of the Superseding Indictment charging him with conspiracy to distribute Ecstasy in violation of 21 USC § 846] Jason Willett was interviewed by law enforcement officials at the US Attorney's Office in the District of Vermont. Willett reported that Karagelidis was receiving kilograms of cocaine for distribution ..."

"...Thus, a preponderance of the evidence supports a finding that Karagelidis made three trips to New York per month over a four month period (October 1999 to February 2000) to obtain 1 kilogram of cocaine on each trip, resulting in a total of twelve kilograms of cocaine. Pursuant to the Drug Equivalency Table in § 2D1.1, one gram of cocaine is equivalent to 200 grams of marijuana. Hence, 12 kilograms of cocaine (12,000 grams) is equivalent to 2,400 kilograms of marijuana (12,000 X 200 = 2,400,000/1,000 = 2,400)." Based upon the

---

[2] The "substantive majority opinion" in United States v. Booker, United States v. FanFan (_U.S. _, 125 S.Ct. 738, 746-756 [2005]) affirmed the holding in Blakely, redefining the role of the sentencing court in determination of a defendant's culpability to conform with the United States Constitution's Sixth Amendment: "Any factor (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by facts established by a plea of guilty or jury verdict, must be admitted by the defendant or proved to the jury beyond a reasonable doubt." United States v. Booker, __ U.S.__, 125 S. Ct. 738, 160 L. Ed 2d 621 (2005). The Booker and FanFan decisions have invalidated the unconstitutional portion of the Federal Sentencing Guidelines and the manner in which sentencing enhancements are applied, affirming that the "guidelines must be applied within the confines of the 6th amendment."

enhancement of the drug quantity by a preponderance of the evidence asserted by the probation department, the base offense level was adjusted to level 34.[3]

Additional enhancements were requested to be applied towards petitioner's sentence, for "Specific Offense Characteristics": " ... Pursuant to U.S.S.G. § 2D1.1 (b)(1), if a dangerous weapon was possessed, the offense level is increased by two levels"; "Adjustments for Role in the Offense": "...the defendant was an organizer, leader, manager, or supervisor in the Ecstasy conspiracy and the offense level is increased by two levels pursuant to U.S.S.G. § 3B1.1(c)." The adjusted offense level resulted in 38; with the three (3) point deduction for acceptance of responsibility, the total offense level was 35.

The Court by a preponderance of the evidence adopted the recommendation of the PSR, even though there was a "no further prosecution" clause by the government that was structured into the written plea agreement, and the petitioner objected to the enhancements. On or about July 22, 2005 the petitioner was sentenced to the term of 84 months imprisonment, with the additional term of 3 years supervised release. Petitioner was subsequently remanded to the custody and care of the United States Attorney General within the Department of Justice.

Upon being designated and classified within the Federal Bureau of Prisons ("FBOP") it was discovered at a unit team custody/classification meeting that the FBOP had, based on sentencing factors in petitioner's PSR[4], pursuant to FBOP Policy Statement PS 5100.07[5], classified petitioner's offense as "Greatest Severity" and accordingly imposed a "Public Safety Factor Variable" (PSFV) for "Greatest Severity" upon petitioner that further enhanced the manner and means by which the imposed sentence would be carried out. Petitioner initiated his administrative remedy appeal process after realizing that he would be systematically denied

---

[3] In arriving at the final drug determination the probation department imputed, by a preponderance of the evidence, 12 Kg of cocaine – an equivalency of 2400 Kg marijuana- to petitioner that was, not incidentally, neither charged in the indictment nor revealed at the time of the plea.

[4] Program Statement 5100.07, Security Designation and Custody Classification Manuel indicates the severity of the current offense is based upon the most severe documented instant offense behavior listed in the PSR.

[5] See copy of FBOP Policy Statement PS 5100.07, Chapter 7, Page 1 and Appendix B, Page, 1 attached herewith (See Appendix)

opportunities that are afforded other inmates; most notably petitioner is being systematically denied the opportunity to benefit from reduced custody level points that are awarded inmates for maintaining clear conduct and making a substantial positive institutional adjustment, which substantially affects petitioner's liberty interest.[6]

It was requested during the administrative remedy appeal process that the PSFV for Greatest Severity be waived in consideration of the extraordinary rehabilitative efforts petitioner has made[7], such that petitioner would benefit from custody-level point reductions and be afforded the same opportunity given other inmates to be placed in the less restrictive environment of a prison camp. After being denied on the request for "Informal Resolution" 28 C.F.R.§ 542.13(a), petitioner submitted a formal appeal of this action complaint pursuant to the provisions of 28 C.F.R.§ 542.14 (BP – 9); 28 C.F.R.§ 542.15(a) (BP- 10); and 28 C.F.R.§ 542.18 (BP – 11). Petitioner asserts that he is well aware of the requirements of <u>Porter v. Nussle</u>, 122 S. Ct. 983 (2002) and <u>Booth v. Churner</u>, 121 S. Ct. 1891 (2001). "No action shall be brought with respect to prison conditions under section 1983 of the Title, or any other Federal law (28 U.S.C. § 2241) by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997 (e) (a).

Petitioner asserts that the administrative remedy process was activated based upon the fact that the Administrative staff at F.M.C Devens, in Ayer, Massachusetts, did not move to correct the liberty interest concern informally, at the Warden's level, the Regional level, and finally on or about July 13, 2004, the Administrator for National Inmate appeals denied the

---

[6] Constitutionally protected "liberty interest" in prison inmates to retain or attain particular security or custody classification may be created by regimes which effectively say to inmates: "If facts A, B and C are established in an appropriate fact finding process, you are thereupon legally entitled to a more favorable security custody classification than you presently have," or, "Unless facts A, B and C are so established, you are legally entitled not to be placed in a less favorable classification than you have." Further, its effect must be to **place substantive limitations on official discretion** thereby giving rise, at the limits imposed upon discretion to legitimate claims of entitlement to the classification sought and administratively denied." (emphasis added) Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994)

[7] See copy of petitioners request for waiver of PSFV citing accomplishments and rehabilitative endeavors while incarcerated attached herewith (See Appendix)

request for relief. The only other recourse is to exercise his right of access to the Courts by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[8]

Because to FBOP refuses to grant the relief requested, the only way to compel it to refrain from using these unconstitutional enhancement factors (Leadership Role Adjustment, and Drug Amount, including 12 Kg of cocaine (an equivalency of 2400 Kg marijuana) which was neither charged in the indictment nor introduced at the time of plea) against the petitioner in determining the manner and means in which the sentence is being carried out is to vacate the sentence and remand this case for a re-sentencing. Prior to the re-sentencing the U.S. Probation Department should be required to change the PSR in a manner consistent with United States v. Booker[9], excising unconstitutionally imposed factors that were not determined by a jury verdict of trial conviction or by admission of guilt, that have, due to the FBOP's reliance upon such factors in classification and imposition of a PSFV for Greatest Severity, a substantial effect upon petitioner's liberty interest.

## SUMMARY OF THE ARGUMENT

The petitioner asserts that he is being denied the benefits of a reduction in custody level that is afforded other inmates within the FBOP when they have demonstrated a positive effort towards compliance with the institutional programming and rehabilitation.[10] The Unit Team evaluates an inmate's effort toward programming and rehabilitation pursuant to its set guidelines

---

[8] The Writ of Habeas Corpus under 28 U.S.C. § 2241 is commonly used in the district that the prisoner is being held, to correct a violation of the constitution, treaties and laws of the United States. In this case to correct the manner in which the sentence is being carried out by the custodian.

[9] See United States v. Booker, ___ U.S. ___ 125 S. Ct. 738, 160 L. Ed 2d 621 (2005) (Quoting In re Winship; Jones v. United States, 526 U.S. 227 (1999); Apprendi v. New Jersey, 530 U.S. 466 (2000); Ring v. Arizona, 536 U.S. 584 (2002) and; Blakely v. Washington, 124 S. Ct. 2531 (2004).

[10] See 28 C.F.R. § 524.12 (d), which takes over for Part 523 entitled "Computation of Sentence" "Good Time" (28 C.F.R. § 523.1 (a); and "Extra Good Time" (28 C.F.R. § 523.1 (b) as well as (d) consideration when 18 U.S.C. § 4161 was repealed, only affording 54 day good time credit under 18 U.S.C. § 3624(b).

of program review every six months.[11] Usually, after eighteen months of clear conduct an inmate is awarded a reduction in his custody level points that, depending upon his custody point total after the reduction, permits him to be redesignated and transferred to a lower level prison facility or a camp.[12] This is comparable to the "good time" credits that are automatically afforded inmates for maintaining clear conduct during their incarceration, because it lessens the time in with which an inmate can effectively join community based activities,[13] the only difference being that an inmate earns these custody level reductions for clear conduct, complying with his program recommendations and requirements, and making a positive effort toward rehabilitation –criteria which the petitioner has gone above and beyond.[14]

Due to the systematic denial of the opportunity of placement in a less restrictive community type environment which is afforded to other inmates that comply with the rules and regulations within the FBOP, comply with programming recommendations, and make a positive effort toward rehabilitation, a liberty interest is created.[15] Petitioner's right to due process is affected because he is being denied earned custody reduction consideration and the benefits of a reduction in custody level points by the FBOP based upon unconstitutional factors (enhancements beyond the legal scope of conviction)[16] in the PSR  It is respectfully requested that this most honorable court move to vacate the sentence, and order a resentencing, so that the

---

[11] The "Unit Team" consists of the Unit Manager, Case Manager, and Inmate Counselor to evaluate an inmates institutional adjustment and progress within a particular FBOP Institution and makes determinations as to whether a prisoner has earned adjustments (upward or downward) in the custody classification scoring, based on past and present behavior.

[12] If an inmate has not maintained clear conduct, depending on the severity of the disciplinary action, his custody level points are raised, resulting in a custody-level change that may vary from out custody/camp placement to a supermax penitentiary.

[13] There are several community-based activities afforded inmates in a lesser security environment such a prison camp, such as educational, family and employment opportunities that are not afforded other inmates.

[14] See copy of petitioners request for waiver of PSFV citing accomplishments and rehabilitative endeavors while incarcerated attached herewith (See Appendix).

[15] The liberty interest is affected, in that an inmate that has no PSFV for Greatest Severity could, in the case of a disciplinary report, still remain in a lower level institution, whereas one with a PSFV for Greatest Severity would be subject to an increased security level institution and/or penitentiary based upon the very same disciplinary report.

[16] The First Circuit has recognized that "[t]here is nothing more corrosive to the fabric of a public institution such as a prison than a feeling among those whom it contains that they are being treated unfairly." Palmigiano v. Baxter, supra 487 F.2d at 1283.

probation department will have the opportunity to correct inaccuracies in the PSR to avoid a

complete miscarriage of justice.

## ARGUMENT (s)

**I. THE FBOP HAS CHANGED THE DRUG AMOUNT CONSIDERATION IN ITS POLICY STATEMENT BY NO LONGER USING THE "HIGH DRUG AMOUNT" IN DETERMINION OF PUBLIC SAFETY FACTORS AND GREATEST SEVERITY LEVEL INCREASES; <u>BOOKER</u> CHANGES THE APPLICABILITY OF ENHANCEMENTS AFFECTING THE WAY A PRISONER'S SENTENCE IS BEING CARRIED OUT**

The petitioner argues that under FBOP Policy Statement ("PS") 5100.07, Chapter 7, Page

6A there was a change effectuated in the manner in which the application of the "Public Safety

Factors" may be used against a prisoner. In the January 31, 2002 amendment of the policy

statement the "High Drug Amount" was removed form the list of factors to be considered the

application of the PSFV for Greatest Severity and Custody Classification Score. This change was

entitled: "Discontinued Public Safety Factors." For the specific purpose of this argument, it is

vital to note that petitioner's request and subsequent administrative appeal to have the PSFV

Greater Severity waived or removed by the FBOP was initiated long after the effective change

mentioned above. The FBOP Administrator for National Inmate Appeals denied petitioner's

request for relief on or about July 13, 2005.[17]

Although the specific argument in this regard revolves around the constitutionality of the

FBOP's authority to impose enhanced restrictions on the manner in which a sentence is being

carried out, it is compelling to note for the purpose of this particular argument that the decision

of the FBOP to deny relief was contrary to its own policy. The statutory reading of the policy

---

[17] The administrative responses to Mr. Karagelidis's appeal, citing his alleged "leadership role ..and ownership interest" in the offense based on his PSR (one of the two criteria upon which the FBOP's imposition of the Public Safety Factor for Greatest Severity is based) support that the reading or <u>interpretation of the leadership role adjustment (pursuant to US Sentencing Guidelines § 3B1.1) by the FBOP leaves a viable question of ambiguity</u>. As such the rule of lenity should govern. See Crandon, 494 U.S. 152, 177-178, 110 S.Ct. 997, 108 L.Ed2d 132 (1990), and Leocal, U.S.

statement incorporates both the drug quantity and role in the offense information from the PSR. Even though the interpretation to apply the PSFV for Greatest Severity from the PSR remained the same, the FBOP exercised its own discretionary authority to rescind the applicability of the "high drug amount" from the public safety factor custody classification determination.

This being the case, it is only just and proper to argue that the FBOP's overall reading and use of factors that can no longer be lawfully placed into the PSR to be considered by the court should be corrected because of the implications of the Sixth Amendment as delineated under United States v. Booker, ___ U.S.___, 125 S. Ct. 738, 160 L. Ed 2d 621 (2005). The Court should direct the FBOP and/or the Probation Department that factors found to be unconstitutionally applied in a prisoner's PSR should not be a considered in determination of the manner in which the sentence should be carried out. Further, if it stands that these factors are no longer able to be ascribed to new and incoming prisoners, it creates an equal protection issue to further allow the FBOP to continue to use this unconstitutionally-placed information (which affects the manner in which the sentence will carried out)[18].

Most recently, during the pendency of U.S. v. Booker, the Warden of F.M.C. Devens under the authority of the Office of General Counsel, for the Department of Justice's Federal Bureau of Prisons, issued a "Memorandum to All Inmates" summarizing the implications of U.S. v. Booker and U.S. v. Fan Fan. In the memorandum specific points were addressed regarding the manner in which the FBOP will handle the implications of Booker, these points stated in part:

- "You are probably aware the\at the U.S. Supreme Court heard oral arguments in the Booker and Fan Fan cases on October 4, 2004."
- It is not possible to predict how the Court will rule or whether the ruling will result in changes to the prison sentences of inmates already in Bureau custody ..."

---

[18] In detaining a prisoner's "liberty" interest, one must ask not only whether a particular event may cause loss to the prisoner but also whether one in his position has any claim to what was taken away. See Morrissey v. Brewer, 408 U.S. 471, 481-84, 92 S. Ct. 2593, 33 L. Ed 2d 484 (1972), cautioning against distinctions based on "privileges" as opposed to "rights," it is necessary to consider not only whether what happens causes subjective loss to the individual, but whether he has a right to any protections against that loss.

- The Bureau cannot effect any change to your sentence unless an amended judgment, or other order, is issued by the appropriate Court…"

'To summarize:

> ➤ It is possible the Court will uphold the Guidelines, in which case nothing will change for you.
>
> ➤ Even if the Court issues a decision that appears to invalidate the guidelines, there will be no immediate or automatic benefit to any specific inmate's case.
>
> ➤ You will have to petition your sentencing Court asking for a review of your sentence in light of the Supreme Courts decision.

- The Bureau continues to closely monitor this situation and will make every effort to communicate timely and accurate information to staff and inmates. We encourage you to stay informed.
- On our end, the Bureau is making plans to facilitate your access to the opinion (e.g., by extending law library hours) so you can take appropriate action on your individual case once the decision is handed down. We encourage you to go to the library and familiarize yourself with the decision and potential implications.
- Keep in mind the Bureau has no control over the decision or its implementation. Should there be a change to the Guidelines, the Bureau does not have the authority to interpret the opinion as it relates to your specific case. Again, it will be up to you to petition the Court that sentenced you.
- We expect you to show good judgment with respect to any course of action you choose to follow as this unfolds.

It is our hope this information is useful to you."

The petitioner argues that the FBOP has the responsibility to correct its application of the PSFV for Greatest Severity upon prisoners that are directly or indirectly affected by the Booker decision. If the "agency" does not correct its policy of relying upon unconstitutional factors placed in the PSR in determining how the petitioner will serve his sentence, the responsibility is

then upon the Court to remand for a resentencing, so that these unconstitutional factors can be removed from the consideration.[19]

Petitioner is exercising his right to take the appropriate action that the Office of General Counsel of the Department of Justice has recommended in the December 3, 2004 memorandum. Since the Bureau has asserted that it does "not have the authority to interpret the opinion as it relates to your specific case, and has denied petitioner the relief requested, it is reasonably asserted that this pleading is properly before this Court to grant the relief under 28 U.S.C. § 2241.

## II.  PETITIONER'S LIBERTY INTEREST IS BEING AFFECTED IN THAT HE IS BEING DENIED THE OPPURTUNITY TO BE AWARDED REDUCED CUSTODY LEVEL CONSIDERATION BASED UPON UNCONSTITUTIONALLY DETERMINED FACTORS IN HIS PSR, APPLIED IN VIOLATION OF HIS SIXTH AMENDMENT RIGHTS

Under the FBOP's description of "Public Safety Factors" the following is stated: "There are certain demonstrated behaviors **which require increased security measures to ensure the protection of society.** There are nine Public Safety Factors, which are applied to inmates who are not appropriate for placement at an institution that would permit inmate access to community (i.e. Minimum Security). The application of a PSFV overrides security point scores to ensure the appropriate security level is assigned to an inmate, based on his or her demonstrated current or prior behavior." (emphasis added).

The First Circuit in Hamm v. Latessa, 72 F. 3d 947 (1st Cir. 1995) stated that: "Although general rules in that a convict has no constitutional or inherent right to be conditionally released before expiration of valid sentence, statute providing for early release **or other benefits** under stipulated conditions may sometimes confer upon prison inmates liberty interest protected by due

---

[19] Because the administrative appeal process is completed and the FBOP has refused to afford relief, this claim for relief now lies with the Court, as conceded by the Office of the General Counsel within the Department of Justice's FBOP.

process clause (emphasis added). Quoting <u>Sandin v. Conner</u>, ___ U.S. ___, 115 S. Ct. 2293, 132 L. Ed 2d 418 (1995), the justices explained that "rather than relying on the presence or absence of a mandatory language in determining whether a statute or regulation confers a liberty interest, courts should focus their inquiry in the nature of the interest allegedly created by the state." (In this instance, an administrative authority FBOP). See id at _____ __ _ _____, 115 S. Ct. at 2297-3000. "State created liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the due process clause of its own force ... **nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."** (emphasis added)

The rule then is that a federal habeas court will not disturb the administrative authorities discretionary interpretation of a statutory policy statement unless it can be shown that such construction or application **offends the Constitution** [20] or some applicable federal statute. In the case at bar, it is reasonably argued that the foundation for the FBOP's interpretation and force to apply the regulatory scheme concerning the application of Greater Severity PSFV's in the custody level classification is guided by the PSR. If the factors placed in the PSR are deemed to have been unconstitutionally applied the prisoners substantial rights are affected.

Dealing with a situation in which the application of the PSFV is based upon the failure of the FBOP to honor its own policy change,[21] coupled with the fact that the aggravation of the manner in which petitioner's sentence is being carried out is based upon factors in the PSR that were unconstitutionally applied it would be a miscarriage of justice not to correct this error.[22] In the second place, a convict must show special prejudice stemming from a changed interpretation,

---

[20] The construction of the aggravating factors used to determine custody level PSFV's is unconstitutional in the sense that the court itself did not have the authority, under the Sixth Amendment of the United States Constitution, to apply culpability enhancements beyond those established by a jury verdict or admission of the defendant. See <u>Blakely v. Washington</u>: "Any factor (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by facts established by a plea of guilty or jury verdict, must be admitted by the defendant or proved to the jury beyond a reasonable doubt." See also United States v. FanFan (U.S. _, 125 S.Ct. 738, 746-756 [2005], <u>United States v. Booker</u>, ___ U.S. __, 125 S. Ct. 738, 160 L. Ed 2d 621 2005

[21] The FBOP changed its applicability of the PSFV in regards to no longer using the "High Drug" amount in 2002 of PS 5100.07.

[22] Blakely/Booker's Sixth Amendment reasoning of the applicability of court imposed enhancement factors.

as was demonstrated herein. See <u>DeWitt v. Ventetoulo</u>, 6 F. 3d 32 (1st Cir. 1993).[23] Petitioner asseverates that, by depriving him of opportunities afforded other inmates to be placed at a lesser custody level and afforded "out custody" prison camp placement, the aggregation policy made his punishment more burdensome and is, therefore impermissible.

At present, there is no constitutionally approved degree of correctness to meet the "legal entitlement" test that would further allow petitioner to be subject to aggregating enhancement factors beyond his offense of conviction, either admitted or found by a jury beyond a reasonable doubt. The most likely source of the required liberty interest here lies in the operational classification regulations, which the FBOP put in place and implements using factors in the PSR that were unconstitutionally attributed in violation of the Constitution of the United States.

The question assigned to the Court is whether petitioner has a liberty interest in the manner in which his sentence is being carried out, such that under the Fourteenth Amendment he is entitled to due process of law, before the same "reduction" in custody level afforded other inmates can be systematically denied him. There now exists a new threshold test as conceded by the Department of Justice, with the Supreme Court's action in clarifying the Sixth Amendment concerns and protections delineated in <u>Booker</u>. The question here, as in <u>Morales v. United States</u>, ___ U.S. at ___ n.3, 115 S. Ct. at 1602 n.3, is whether the regulation attributing the PSFV for Greatest Severity "increases the penalty by which a crime is punishable" in view of the fact that petitioner must remain confined at no less than a low security facility and remain ineligible for privileges associated with lower security imprisonment.

It can be reasonably argued that the Office of General Counsel of the Department of Justice set the parameters, by asserting in the above mentioned memorandum, that due process violations would properly be in the Courts hands to correct. It can also be argued that the application of the PSFV increases the penalty because it subjects petitioner to a different and

---

[23] The change under these circumstances concerns the clarification and applicability of the Sixth Amendment in the manner in which the Court or the government may apply enhanced penalties.

stricter prison regime: unless and until the PSR and Judgment and Commitment "J & C" is corrected he must remain confined at no less than a low security facility, and remain ineligible for privileges associated with lower security custody.[24]

This change in the conditions determining the nature of his confinement while serving his sentence is not allowed under the prevailing "legal regime" Knox v. Lanham, 895 F. Supp. 750, 758 (D. Md. 1995). There is no question that the regulations and particularly the classification scoring devised in conjunction with the PSR provides "substantive predicates" to govern official decision-making. Missing however, is the crucial link between the substantive predicates and the mandatory constitutional application: The governing decision making to apply the PSFV for Greatest Severity "stop[s] short of requiring that a particular result is to be reached upon a finding that constitutionally applied predicates are met."

Since it is unconstitutional under the Sixth Amendment for the defendant to be subjected in Court to criminal enhancements under a lesser standard of proof, other than facts admitted or found beyond a reasonable doubt, then arguably so, it should be unconstitutional for the FBOP to use information that was unconstitutionally entered and applied through the PSR. Further liberty interest concerns are presented in the fact that petitioner could face additional punishment beyond his statutory maximum if he is violated under his terms of supervised release, as at present he has served the legally sufficient portion of his sentence plus the additional enhancement penalties.

---

[24] The lower the security the better the opportunity a prisoner has to participate in community activities

## CONCLUSION

Based upon the controlling precedent of the Supreme Court delineated under United States v. Booker's reasoning of the Sixth Amendment protections and implications coupled with the fact that the Department of Justice has asserted that the proper avenue for relief is through the Court, it is respectfully prayed that this most honorable court move to remand this action for a re-sentencing to afford the Probation Department the opportunity to correct the PSR and the Court to revise the J & C in order to protect petitioner's substantial rights and to avoid a complete miscarriage of justice.

Respectfully presented,

Angelo Karagelidis, Pro se.
P.O.W. # 22989-038
F.M.C. Devens, Box 879
Ayer, MA. 01432

## CERTIFICATE OF SERVICE

I, Angelo Karagelidis, do hereby affirm and attest that I have mailed a copy of the attached motion to the office of the Respondent/Defendant's legal counsel at the Office of the U.S. Attorney, PO Box 845, Burlington, VT., 05402, by first class pre paid mail, on this 17th day of August 2005. Signed pursuant to the provisions of 28 U.S.C. § 1746.

Angelo Karagelidis, Pro se.
P.O.W. # 22989-038
F.M.C. Devens Box 879
Ayer, MA. 01432

Cc: RYM/Attorney
    DOJ/AUSA

# **TABLE OF CONTENTS OF APPENDIX**

**PETITIONER'S REQUEST FOR WAIVER OF PSFV FOR GREATEST SEVERITY AND REDUCED CUSTODY LEVEL VIA THE ADMINISTRATIVE REMEDY PROCESS, <u>DETAILING PETITIONER'S EXTRAORDINARY ACCOMPLISHMENTS AND REHABILITATIVE ENDEAVORS WHILE INCARCERATED</u> (3 pages):**
(BP-11) Appeal to Office of General Counsel in Washington D.C.

**RESPONSE TO PETITIONER'S APPEAL FOR WAIVER OF PSFV FOR GREATEST SEVERITY AND REDUCED CUSTODY LEVEL VIA THE ADMINISTRATIVE REMEDY PROCESS (1 page):**
(BP-11) Response from Office of General Counsel in Washington, D.C.

**FBOP POLICY STATEMENT PS 5100.07, CHAPTER 7, PAGE 1 AND PS 5100.07APPENDIX B, PAGE, 1 (2 pages):**
Explaining FBOP's procedures and criteria for inmate custody/classification and imposition of the *PSFV for Greatest Severity.*

**MEMORANDUM FOR ALL INMATES (2 pages):**
From the Warden of F.M.C. Devens, through the Department of Justice's Office of General Counsel advising on the implications of <u>United States v. Booker</u>

**CUSTODY CLASSIFICATION FORMS (3 pages):**
Demonstrating that although it is recommended that Mr. Karagelidis be considered for a decrease in custody level, the Public Safety Variable for Greatest Severity (PSFV) precludes the reduction.

**PETITIONER'S REQUEST FOR WAIVER OF PSFV FOR GREATEST SEVERITY AND REDUCED CUSTODY LEVEL VIA THE ADMINISTRATIVE REMEDY PROCESS, <u>DETAILING PETITIONER'S EXTRAORDINARY ACCOMPLISHMENTS AND REHABILITATIVE ENDEAVORS WHILE INCARCERATED</u>**
**(3 pages):**
(BP-11) Appeal to Office of General Counsel in Washington D.C.

I am appealing the denial of a waiver of my "PSF *for Greatest Severity*" based on the following:

a. **I feel that I merit a waiver based on my (1) perfect disciplinary/institutional record while incarcerated; (2) institutional adjustment; and (3) my work to aid the FMC Devens Education Department, the inmates at FMC Devens , and thus, the FBOP.**

b. The fact that I was only given +2 –rather than a **+4**- point enhancement for my role in the conspiracy in accordance with that I was <u>not</u> the conspiracy leader.  In fact, the PSIR clearly indicates that the conspiracy's *leader/organizer* was George Lammers.

c. The fact that the 311,000 "ecstasy" pills alleged to have been distributed in the conspiracy were imputed to a large group of people (of which I was but one), and that I was thus not personally responsible, according to the information in my PSIR, for the distribution of "over 250,000 dosage units" –the requirement <u>in addition to</u> being *organizer/leader* for the imposition of a PSF for greatest severity (see Attachment A).

d. That the categorization of my offense as "greatest severity" and the subsequent imposition of a *PSF for "greatest severity"* represents gross disparity in classification, and possibly unfair discrimination, as my codefendant and partner in the instant offense, Jason Willett, who pled guilty to the very same offense, was not categorized as I was and is now serving his sentence at an FBOP Camp –as would like to serve what little is left (16 months to halfway-house) of my sentence.

I have enclosed all <u>previous</u> correspondence\copouts outlining my past endeavors to effect this outcome (see *Attachment B*).

I hope to merit this waiver based on my institutional adjustment, rehabilitative endeavors/volunteer work, perfect disciplinary record while in F.B.O.P. custody, time left to serve on my sentence (22 months left to serve on 84 month sentence, **16** months counting halfway house) and clear criminal history/offense record (first time non-violent offender).

I am continuing to strive to earn this waiver by actively engaging in copious rehabilitative & volunteer activities while incarcerated here at FMC Devens. I have completed several extensive computer-animated tutorials/instructional presentations (MS Office based) to aid in the instruction of GED subject matter, that I'd begun work on in 2003, upon my arrival here at FMC Devens.  These easy-to-use, efficient computer tutorials have been incorporated into the computer based GED curriculum and are available for use by inmates as supplementary instructional aids on the Education Department's computers.  It is my intent to develop -in conjunction with the students that will participate in

the upcoming VT Computer Aided Graphic Arts program which I will
tutor- even more sophisticated versions of these tutorials that
may be used by other federal prisons.

I've also helped to create a computer-based student tracking
system for the VT Computer Courses and GED using available MS
Office applications that facilitates entry and maintenance of
student performance information.

In addition to these "live-work" projects, I'm continuing to work
arduously as a tutor, instructor and clerk in the education
department here at FMC Devens. I tutor GED and assist in
Vocational Training Computer Classes under the supervision of Mr.
James Boyack during the day, and I instruct Adult Continuing
Education (A.C.E.) courses on a volunteer basis at night -in
addition to functioning as clerk, on a volunteer basis, for the
A.C.E. program (thus eliminating a formerly paid position). To
date, I've instructed Adult Continuing Education course's in
Physics, Algebra, and Basic Electronics, for which I've created
extensive instructional aids & computer animated presentations
that can be utilized by inmate instructors wishing to teach these
courses here at FMC Devens in the future. As A.C.E. clerk I
primarily assist instructors in the creation of curriculums, help
administer course schedules and room assignments, aid in
management of student data/rosters, and aid in the promotion and
"advertisement" of A.C.E. and other educational programs to the
inmate population.

Moreover, to supplement my own education and further rehabilitate
myself I participate in numerous Adult Continuing Education and
self-study courses as a student (ranging in subject area from
Business Management to Computer Graphics) and have completed the
forty-hour non-residential drug treatment program offered here at
FMC Devens. I anticipate I will have earned approximately 30
Adult Continuing Education certificates/credits by the time this
request receives consideration.

I also work in the area of "pre-release", where I've helped the
education staff with the successful setup and execution of the
2003 FMC Devens "Mock Job Fair" through the preparation of student
resumes, creation of related pamphlets and literature, and
setup/decoration of the department. In addition, I assist
counselor David Premsingh with the instruction of pre-release
classes in "Personal Finance" and "Basic Employment" that he
offers to inmates here at FMC Devens.

In closing, I wish to submit some final, pertinent facts about my
personal history and record while incarcerated in the F.B.O.P in
support of my request for a waiver of my PSF. Foremost, I've
maintained a perfect disciplinary record while in F.B.O.P.
custody, never having received any disciplinary reports or been
subject to disciplinary action of any kind. I am also a first-
time, non-violent offender whose history is unblemished by any
criminal conduct whatsoever prior to the instant offense for which
I am incarcerated. To the contrary, as my P.S.I.R. reflects, I
had led a law-abiding and highly productive life as a respected
member of my community prior to the instant offense. I graduated
Summa Cum Laude, from Tufts University in Boston with a B.S. in
Mechanical Engineering and completed one year of graduate work
towards my MD degree at Tufts University School of Medicine. I'd
worked in the defense industry as a mechanical engineer -with
D.o.D. clearance- at General Electric in Lynn, MA and have also
owned my own business. Candidly, in consideration of all the

relevant data I hardly feel that I represent the kind of threat to
the community that the imposition of a Public Safety Factor for
"greatest severity" is utilized to indicate. Contrary to posing
the "threat" to the safety and well being of my community that
this variable suggests, I plan to continue with the positive,
constructive course of rehabilitation on which I've embarked
during the remainder (**16-18** months, depending on half-way house
placement) of my incarceration and, upon release, return to the
being the productive, contributing member of my community that I'd
been before I took the short-lived, though admittedly very
serious, criminal detour in my life for which I am incarcerated.

I greatly appreciate your time spent in consideration of my
request.

Respectfully,

Angelo Karagelidis
Reg. No.: 22989-038

4/11/04
(copy)

3/3

21

**RESPONSE TO PETITIONER'S APPEAL FOR
WAIVER OF PSFV FOR GREATEST SEVERITY
AND REDUCED CUSTODY LEVEL VIA THE
ADMINISTRATIVE REMEDY PROCESS
(1 page):**
(BP-11) Response from Office of General Counsel in
Washington, D.C.

**Administrative Remedy No. 321615-A2**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal in which you claim the Greatest Severity Public Safety Factor (PSF) is not applicable to your case. You request a waiver of your Greatest Severity Public Safety Factor (PSF).

Our review reveals the Warden and Regional Director adequately and thoroughly responded to the issues raised in your appeal. The application of PSFs is within the authority of the Warden and Regional Director per Program Statement (P.S.) 5100.07, Security Designation and Custody Classification Manual. This P.S. states the Greatest Severity PSF shall be applied when an inmate's current offense falls into the Greatest Severity range according to the Offense Severity Scale. P.S. 5100.07 also states that the Greatest Severity PSF shall be applied for a drug offense where the offender was part of an organizational network and he or she organized or maintained ownership interest/profits from large-scale drug activity and the marijuana amount was greater than or equal to 620 kilograms.

Your Presentence Investigation Report (PSI) indicates you were an organizer, leader, manager, or supervisor in a drug trafficking organization responsible for the distribution of the Ecstasy pills equivalent to that of 2,614.08 kilograms of marijuana. Therefore, we find the application of the Greatest Severity PSF appropriate and in accordance with policy.

Your appeal is denied.


July 13, 2004
_____
Date

_____
Harrell Watts, Administrator
National Inmate Appeals

23

RECEIVED

JUL 20 2004

FMC DEVENS
WARDEN'S OFFICE

ANGELO KARAGELIDIS, 22989-038
DEVENS FMC    UNT: G UNIT    QTR: G02-221L
P.O. BOX 880
AYER,   MA 01432

221

24

**FBOP POLICY STATEMENT PS 5100.07, CHAPTER 7, PAGE 1 AND PS 5100.07APPENDIX B, PAGE, 1 (2 pages):**
Explaining FBOP's procedures and criteria for inmate custody/classification and imposition of the *PSFV for Greatest Severity*.

```
┌─────────────────────────────────────────────────────┐
│ PUBLIC SAFETY FACTORS AND MANAGEMENT VARIABLES        │
└─────────────────────────────────────────────────────┘
```

## PUBLIC SAFETY FACTORS

There are certain factors which require increased security measures to ensure the protection of society. Staff shall apply any of the following Public Safety Factors (PSF) that are appropriate. Up to three PSFs may be entered on the Update Security Designation (BP-337). If more than three applicable Public Safety Factors are identified, use those which would most appropriately control the inmate's placement.

**CODE**          **DESCRIPTION - PSF**

**A**    **NONE**. No Public Safety Factors apply.

**B**    **DISRUPTIVE GROUP**. A **male** inmate who is a validated member of a Disruptive Group identified in the Central Inmate Monitoring System shall be housed in a High security level institution, unless the PSF has been waived.

   **Note:** At the time of initial designation, if the PSI or other documentation identifies the inmate as a possible member of one of the Central Inmate Monitoring Disruptive Groups, Community Corrections (CC) staff shall indicate a PSF on the BP-337. However, CC staff shall not enter the CIM assignment "Disruptive Group." Upon loading this PSF on a not-yet-validated member, CC staff shall 1) make a notation in the remarks section to indicate the need for validation upon arrival at the institution, and 2) notify the Central Office Intelligence Section, via GroupWise, to advise them of the inmate's status. Upon the inmate's arrival at the designated institution, the intake screener shall notify the institution's Special Investigation Supervisor (SIS) of the inmate's PSF, in order to begin the validation process.

**C**    **GREATEST SEVERITY OFFENSE**. A **male** inmate whose current term of confinement falls into the "Greatest Severity" range according to the Offense Severity Scale (Appendix B) shall be housed in at least a Low security level institution, unless the PSF has been waived.

```
┌─────────────────────────────┐
│    OFFENSE SEVERITY SCALE    │
└─────────────────────────────┘
```

## GREATEST SEVERITY

**Aircraft Piracy** - placing plane or passengers in danger
**Arson** - substantial risk of death or bodily injury
**Assault** - serious bodily injury intended or permanent or
    life threatening bodily injury resulting)
**Car Jacking** - any
**Drug Offense** - see criteria below*
**Escape** - closed institution, secure custody, force or
    weapons used
**Espionage** - treason, sabotage, or related offenses
**Explosives** - risk of death or bodily injury
**Extortion** - weapon or threat of violence
**Homicide or Voluntary Manslaughter** - any
**Kidnaping** - abduction, unlawful restraint, demanding or
    receiving ransom money
**Robbery** - any
**Sexual offenses** - rape, sodomy, incest, carnal knowledge,
    transportation with coercion or force for commercial
    purposes
**Toxic Substances/Chemicals:** - weapon to endanger human life
**Weapons** - distribution of automatic weapons, exporting
    sophisticated weaponry, brandishing or threatening use of
    a weapon

\*    Any drug offender whose current offense includes the following
criteria shall be scored in the Greatest severity category:

The offender was part of an organizational network and he or she
organized or maintained ownership interest/profits from **large-scale**
drug activity,

***AND***

the drug amount equals or exceeds the amount below:

**Cocaine** - greater than or equal to 10,000 gm, 10 K, or 22 lb
**Cocaine Base "Crack"** - greater than or equal to 31 gm
**Hashish** - greater than or equal to 250,000 gm, 250 K, or 551 lb
**Marijuana** - greater than or equal to 620,000 gm, 620 K, or 1,367 lb
**PCP** - greater than or equal to 100,000 mg, 100 gm, or 20,000 dosage
units
**Heroin or Opiates** - greater than or equal to 2,000 gm, 2 K, or 4.4 lb
**Methamphetamine** - greater than or equal to 16,000 gm, 17 K, or 35 lbs
**Other illicit drugs:** - Amphetamine, Barbiturates, LSD, etc. greater
than or equal to 250,000 dosage units

**MEMORANDUM FOR ALL INMATES**
**(2 pages):**
From the Warden of F.M.C. Devens, through the
Department of Justice's Office of General Counsel advising
on the implications of <u>United States v. Booker</u>



**U.S. Department of Justice**

**Federal Bureau of Prisons**

December 3, 2004

MEMORANDUM FOR ALL INMATES

FROM:       David L. Winn, Warden

SUBJECT:    <u>U.S. v. Booker</u> and <u>U.S. v. Fanfan</u> Talking Points

Bureau of Prisons staff continue to get questions from inmates
with respect to the <u>United States v. Booker</u> and <u>United States v.
Fanfan</u> cases currently under consolidated review by the U.S.
Supreme Court.  These cases will decide whether the Courts
previous decision in <u>Blakely v. Washington</u> applies to the U.S.
Sentencing Guidelines.  To address these questions, the Office of
General Counsel has provided the following information, which is
being communicated to inmates in every Bureau institution.  Given
that the Supreme Court will likely be issuing a decision soon, we
wanted to take this opportunity to review where things stand.

**Points:**

- You are probably aware that the U.S. Supreme Court heard
  oral arguments in the <u>Booker</u> and <u>Fanfan</u> cases on October 4,
  2004.

- It is not possible to predict how the Court will rule or
  whether the ruling will result in changes to the prison
  sentences of inmates already in Bureau custody (i.e.,
  retroactivity).  Only individual sentencing courts can
  assess the impact of <u>Blakely</u>, <u>Booker</u>, and <u>Fanfan</u> on
  individual inmates prison sentences.

- But, it is essential that you understand ***nothing*** will happen
  automatically with respect to your case as a result of the
  Supreme Court's decision.  Rather, you would have to
  petition the Court where you were sentenced, asking for a
  review of your sentence in light of the Supreme Courts
  decision.

- The Bureau cannot effect any change to your sentence unless
  an amended criminal judgment, or other order, is issued by
  the appropriate Court.

- To summarize:

  ▸ It is possible the Court will uphold the Guidelines, in which case nothing will change for you.

  ▸ Even if the Court issues a decision that appears to invalidate the Guidelines, there will be no immediate or automatic benefit to any specific inmate's case.

  ▸ You will have to petition your sentencing Court asking for a review of your sentence in light of the Supreme Courts decision.

- The Bureau continues to closely monitor this situation and will make every effort to communicate timely and accurate information to staff and inmates. We encourage you to stay informed.

- There is likely to be media coverage of the ruling. Do not rely on media reports for an immediate, accurate, or complete analysis of what is likely to be a very complicated decision, since this may be misleading in your particular case.

- On our end, the Bureau is making plans to facilitate your access to the opinion (e.g., by extending law library hours) so you can take appropriate action on your individual case once the decision is handed down. We encourage you to go to the library and familiarize yourself with the decision and potential implications.

- Keep in mind the Bureau has no control over the decision or its implementation. Should there be a change to the Guidelines, the Bureau does not have the authority to interpret the opinion as it relates to your specific case. Again, it will be up to you to petition the Court that sentenced you.

- We expect you to show good judgment with respect to any course of action you choose to follow as this unfolds.

It is our hope this information is useful to you.

**CUSTODY CLASSIFICATION FORMS**
**(3 pages):**
Demonstrating that although it is recommended that Mr.
Karagelidis be considered for a decrease in custody level,
the Public Safety Variable for Greatest Severity (PSFV)
precludes the reduction.

31

(A) NAME....: KARAGELIDIS     ANGELO

DES/ENGL/LEM/OPL/LEM /LEM     MOTIV: NONE

PUBSTTY: GRT SVRTY     MED:

(B) DETAINER: (0) NONE     SEVERITY........: (7) GREATEST

MOS REL..(..: 40

PRIOR........: (0) NONE     ESCAPES........: (0) NONE

VIOLENCE....: (0) NONE     PRECOMMT STATUS: (0) N/A

(C) TIME SERVED.....: (3) 0-25%     DRUG/ALC ABUSE.: (2) PAST 5 YRS

MENT/PSYCH STABILITY: (4) FAVORABLE     TYPE DISCIP RPT: (5) NONE

FREQ DISCIP REPORT..: (3) NONE     RESPONSIBILITY.: (4) GOOD

FAMILY/COMMUN TIES..: (4) GOOD

**11/08/2002**

========================= LEVEL AND CUSTODY SUMMARY =========================

| BASE | CUST | VARIANCE | SEC TOTAL | SCORED LEV | MGMT SEC LEVEL | CUSTODY | CONSIDER |
|------|------|----------|-----------|------------|----------------|---------|----------|
| +7 | +25 | -2 | +5 | LOW | N/A | IN | DECREASE |

(D) TYPE REVIEW    NEW CUSTODY    APPROVED: ___ YES _No_ NEXT REVIEW: _Nov '03_

_✓_REGULAR    ___MAX

___EXCEPTION    ___IN    CHAIRPERSON SIGNATURE....:

     ___OUT    WARDEN/DESIGNEE SIGNATURE

     ___COM    FOR EXCEPTION REVIEW: _____

REASON(S) FOR NOT FOLLOWING FORM'S RECOMMENDATION:

- deny decrease at this time due to recent arrival
to Fac. BW and present PSF of "6" Severity.
The Unit Team will monitor inmate Karagelidis'
progress and behavior and will reconsider
a decrease at next custody classif. review.

COPY: CENTRAL FILE, SECTION TWO
       INMATE

32

Case 2:05-cv-00336-MSJ Document 11-2 Filed 09/08/2005 Page 10 of 38

## (A) IDENTIFYING DATA

REG NO..: 22989-038
NAME...: KARAGELIDIS, ANGELO

FORM DATE: 10-28-2003

ORG: DEV
CR HX PT: 0

PUB SFTY: GRT SVRTY

MGTV: NONE
MVED:

DETAINER: (0) NONE
MOS REL.: 28
ESCAPES.: (0) NONE
PRECOMMT: (0) N/A

### (B) BASE SCORING

SEVERITY.......: (7) GREATEST
PRIOR..........: (0) NONE
VIOLENCE.......: (0) NONE

### (C) CUSTODY SCORING

TIME SERVED.....: (4) 26-75%
MENTAL STABILITY: (4) FAVORABLE
FREQ DISCIP RPT.: (3) NONE
FAMILY/COMMUN...: (4) GOOD

DRUG/ALC ABUSE.: (2) PAST 5 YRS
TYPE DISCIP RPT: (5) NONE
RESPONSIBILITY.: (4) GOOD

### --- LEVEL AND CUSTODY SUMMARY ---

| BASE | CUST | VARIANCE | SEC TOTAL | SCORED LEV | MGMT SEC LEVEL | CUSTODY IN | CONSIDER DECREASE |
|------|------|----------|-----------|------------|----------------|-----------|-------------------|
| +7 | +26 | -2 | +5 | LOW | N/A | | |

G0005    TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

33

Case 2:05-cv-02836-KJN Document 1-2 Filed 09/30/2005 Page 180 of 188 16:27:00

## (A) IDENTIFYING DATA

REG NO..: 22989-038              FORM DATE: 10-24-2004              ORG: DEV
NAME....: KARAGELIDIS, ANGELO                                      CR HX PT: 0
                                      MGTV: NONE
PUB SFTY: GRT SVRTY                    MVED:

## (B) BASE SCORING

DETAINER: (0) NONE              SEVERITY.......: (7) GREATEST
MOS REL.: 16                    PRIOR..........: (0) NONE
ESCAPES.: (0) NONE              VIOLENCE.......: (0) NONE
PRECOMMT: (0) N/A

## (C) CUSTODY SCORING

TIME SERVED.....: (4) 26-75%       DRUG/ALC ABUSE.: (2) PAST 5 YRS
MENTAL STABILITY: (4) FAVORABLE    TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE         RESPONSIBILITY.: (4) GOOD
FAMILY/COMMUN...: (4) GOOD

--- LEVEL AND CUSTODY SUMMARY ---
BASE CUST VARIANCE  SEC TOTAL   SCORED LEV MGMT SEC LEVEL   CUSTODY   CONSIDER
+7   +26    -2        +5         LOW            N/A            IN      DECREASE


G0005          TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

34

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Angelo Karagelidis,       :
        Petitioner,       :
                          :
                          :
  v.                      :      File No. 2:00-CR-11
                          :
United States Department  :
of Justice,
        Respondent.

OPINION AND ORDER
(Paper 306)

Petitioner Angelo Karagelidis has filed a petition

pursuant to 28 U.S.C. § 2241, asking the Court to

"correct and or modify [his] judgment of conviction and

sentence." (Paper 306). Karagelidis was sentenced in

2002 to 84 months in prison after pleading guilty to one

count of conspiracy to distribute Ecstacy. He now claims

that the pre-sentence investigation report ("PSR")

calculated drug quantities that were not specified in his

guilty plea and were never found by a jury, thereby

violating the U.S. Supreme Court's holding in United

States v. Booker, 125 S. Ct. 738 (2005). Karagelidis

further claims that the Bureau of Prisons ("BOP") has

used the drug quantities set forth in the PSR as a basis

for enhancing "the manner and means by which the imposed

sentence would be carried out." Id. at 5. Consequently,

I hereby attest and certify on
September 6 2005          , that
the foregoing document is a full, true and correct
copy of the original on file in my office, and in my
legal custody.
RICHARD PAUL WASKO
Clerk, U.S. District Court
District of Vermont
BY:
Deputy Clerk

Karagelidis asks the Court, pursuant to § 2241, to "direct the [BOP] and/or the Probation Department that factors found to be unconstitutionally applied in a prisoner's PSR should not be considered in [a] determination of the manner in which the sentence should be carried out." Id. at 10. In the alternative, he asks for re-sentencing "so that these unconstitutional factors can be removed from the consideration." Id. at 11-12.

Section 2241 petitions are appropriate for challenges to "the execution of a federal prisoner's sentence." Roccisano v. Menifee, 293 F.3d 51, 57 (2d Cir. 2002). "Execution" includes matters such as the administration of parole, computation of the sentence, transfers between prisons, and conditions of detention. See Rickenbacker v. United States, 365 F. Supp. 2d 347, 352 (E.D.N.Y. 2005) (citing Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001); Chambers v. United States, 106 F.3d 472, 474-75 (2d Cir. 1997)). Also, when a prisoner is alleging action by BOP that has denied him "good time" credits, § 2241 is the appropriate vehicle for relief. Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) (federal inmate's challenge to prison

2

disciplinary proceeding that resulted in loss of
good-time credits properly brought as writ of habeas
corpus pursuant to 28 U.S.C. § 2241).

Here, Karagelidis seeks an order compelling the BOP
to disregard certain findings in the PSR. He claims that
those findings have affected the execution of his
sentence, including his eligibility for a reduction in
custody level points. These points, he claims, are
"comparable to the 'good time' credits that are
automatically afforded inmates for maintaining clear
conduct during their incarceration, because it lessens
the time in with [sic] which an inmate can effectively
join community based activities." (Paper 306 at 8).
Although he also asks for re-sentencing so the PSR can be
changed, Karagelidis's fundamental claim is that the BOP
has improperly classified him and, as a result, extended
the amount of time he will spend in prison. Therefore,
he has properly brought his petition under § 2241.

As Karagelidis notes in his filing (Paper 306 at 7
n.8), a § 2241 petition must be brought in a court that
has jurisdiction over his custodian. 28 U.S.C. § 2241;

Rumsfeld v. Padilla, 124 S. Ct. 2711, 2727 (2004).

Karagelidis is currently incarcerated at Fort Devens in

Ayer, Massachusetts. Accordingly, his petition is hereby

TRANSFERRED to the United States District Court for the

District of Massachusetts.

### Conclusion

For the reasons set forth above, the petition for

habeas corpus submitted by Karagelidis is construed as a

filing made pursuant to 28 U.S.C. § 2241. Because this

Court lacks jurisdiction, the petition is hereby

TRANSFERRED to the United States District Court for the

District of Massachusetts.

Dated at Burlington, in the District of Vermont,

this 6th day of September, 2005.

/s/ Willliam K. Sessions III
William K. Sessions III
Chief Judge, United States District Court

4

CLOSED

## United States District Court
## District of Massachusetts (Boston)
## CRIMINAL DOCKET FOR CASE #: 1:00-mj-00441-RBC-ALL

Case title: USA v. Karagelidis                    Date Filed: 02/03/2000

Assigned to: Magistrate Judge Robert
B. Collings

### **Defendant**

**Angelos Karagelidis** (1)                represented by **Philip A. Tracy, Jr.**
*TERMINATED: 02/08/2000*                      DiMento & Sullivan
                                              7 Faneuil Hall Marketplace
                                              3rd Floor
                                              Boston, MA 02109-1649
                                              617-523-2345
                                              *TERMINATED: 02/08/2000*
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*
                                              *Designation: Retained*

                                              **Steven J. Rappaport**
                                              Rappaport & Delaney
                                              228 Central St.
                                              Lowell, MA 01852
                                              978-454-8103
                                              Fax: 978-937-9422
                                              Email: srappap@aol.com
                                              *TERMINATED: 02/08/2000*
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

### **Pending Counts**                        ### **Disposition**

None

### **Highest Offense Level (Opening)**

None

### **Terminated Counts**                     ### **Disposition**

None

### **Highest Offense Level (Terminated)**

None

## Complaints                                    ## Disposition

IN VIOLATION OF TITLE 21 US
CODE, SECTIONS 963 &846-
UNLAWFULLY CONSPIRE TO
IMPORT A SCHEDULE I
CONTROLLED SUBSTANCE AND
CONSPIRED TO DISTRIBUTE
CONTROLLED SUBSTANCE

arrest in the district of vermont

## Notice

**Pretrial Services**                    represented by **Pretrial Services**
                                         US Pretrial Services
                                         1 Courthouse Way
                                         Boston, MA 02210
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

## Plaintiff

**USA**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 02/03/2000 | 1 | COMPLAINT as to Angelos Karagelidis , filed. Pretrial Services (sad) (Entered: 02/07/2000) |
| 02/03/2000 | 2 | AFFIDAVIT of Richard Schuh, as to Angelos Karagelidis , re: [1-1] complaint , filed. (sad) (Entered: 02/07/2000) |
| 02/03/2000 |   | Rule 40 Arrest of Angelos Karagelidis . (sad) (Entered: 02/07/2000) |
| 02/03/2000 |   | Initial appearance as to Angelos Karagelidis held ; Detention Hearing set for 4:15 2/8/00 for Angelos Karagelidis (Defendant informed of rights.) (sad) (Entered: 02/07/2000) |
| 02/03/2000 | 3 | Mag. Judge Robert B. Collings . ORDER entered for Temporary detention as to Angelos Karagelidis Bond set to for Angelos Karagelidis. (sad) (Entered: 02/07/2000) |
| 02/03/2000 | 3 | Mag. Judge Robert B. Collings . CLERK'S NOTES as to Angelos Karagelidis , re: initial appearance; ; Court Reporter: tape (sad) (Entered: 02/07/2000) |
| 02/08/2000 |   | Detention hearing as to Angelos Karagelidis held . (mr) (Entered: 02/17/2000) |

| 02/08/2000 | 4 | Mag. Judge Robert B. Collings . CLERK'S NOTES as to Angelos Karagelidis , re: detention hearing; ; Court Reporter: tape 2000 (mr) (Entered: 02/17/2000) |
| 02/08/2000 | 5 | WAIVER by Angelos Karagelidis of Rule 40 Hearings, filed. (mr) (Entered: 02/17/2000) |
| 02/08/2000 | 6 | NOTICE of Appearance of counsel for Angelos Karagelidis , by Attorney Philip A. Tracy Jr.. (mr) (Entered: 02/17/2000) |
| 02/08/2000 | 7 | NOTICE of Appearance of counsel for Angelos Karagelidis , by Attorney Steven J. Rappaport. (mr) (Entered: 02/17/2000) |
| 02/08/2000 | 8 | Mag. Judge Robert B. Collings . ORDER entered as to Angelos Karagelidis : commitment to another district. (mr) (Entered: 02/17/2000) |
| 02/08/2000 |  | Rule 40 Documents as to Angelos Karagelidis sent to USDC Burlington, VT. (mr) (Entered: 02/17/2000) |
| 02/08/2000 |  | **Terminated party Angelos Karagelidis (dms) (Entered: 04/13/2000) |