IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ANGELO KARAGELIDIS,            )
                               )
            Petitioner,        )
                               )
v.                             )            Civil Action # 05-CV-11846-NG
                               )
U.S. DEPARTMENT OF JUSTICE,    )
                               )
            Respondent.        )

**RESPONDENT'S MEMORANDUM IN SUPPORT OF THE MOTION TO
DISMISS THE CLAIM AS MOOT AND FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF MAY BE GRANTED**

INTRODUCTION

Petitioner is requesting habeas relief alleging that he has been erroneously

assigned a Public Safety Factor (PSF) that deprives him of opportunities afforded

other inmates, such as a lower custody level camp placement.  The Respondent[1]

submits this memorandum in support of its motion to dismiss as Petitioner has

failed to state a claim upon which relief may be granted, and, in any event, his

placement into a Community Corrections Center ("CCC") in September 2005 in

anticipation of the completion of his sentence in March of 2006 renders the claim

---

[1] The Respondents initially note that the instant Petition is subject to dismissal
for failure to name the correct Respondent.  Rumsfeld v. Padilla, 124 S.Ct. 2711,
2717-18 (2004) ("the proper respondent to a habeas petition is 'the person who has
custody over [the petitioner].'")(quoting 28 U.S.C. § 2242).

moot as that facility is less restrictive than the "camp" into which Petitioner seeks placement.

FACTS

A.    Background

Angelo Karagelidis is a federal inmate who was previously incarcerated at the Federal Medical Center (FMC) in Devens, Massachusetts.  See Document 1a, Public Information Data, p. 1, attached to the Declaration of FMC Devens Paralegal Specialist Stephanie Scannell.[2]  On September 13, 2005, he was transferred to a CCC, where he is currently housed.  Id.

On July 24, 2002, in the United States District Court for the District of Vermont, Petitioner was sentenced to an eighty-four (84) month term of incarceration with a three (3) year period of supervision to follow for Conspiracy to Distribute Ecstacy, in violation of 21 U.S.C. §§ 841, 846.  Id. at p. 2.  Assuming Petitioner is granted all remaining Good Conduct Time (GCT) available to him under 18 U.S.C. § 3624(b), his projected release date is March 10, 2006.  Id. at p. 3.

B.    Petitioner's Claims For Relief

Petitioner states that the BOP imposed a Public Safety Factor Variable for

---

[2]  The Scannell Declaration is attached as Exhibit 1.

Greatest Severity based on "unconstitutional"[3] sentencing factors in his Presentence

Investigation Report (PSR).  In sum, Petitioner contends that the BOP's reliance

upon the PSR's factual findings "enhanced the manner and means by which the

imposed sentence would be carried out."  See Petition, p. 5.   Petitioner contends

that "he would be systematically denied opportunities that are afforded other

inmates," such as the opportunity to benefit from reduced custody level points and

be placed in the less restrictive environment of a prison camp.  Id. at pp. 5-6.  As

relief, Petitioner requests that the Court "move to remand this action for a

resentencing to afford the Probation Department the opportunity to correct the PSR

and the Court to revise the J&C in order to protect petitioner's substantial rights and

to avoid a complete miscarriage of justice."  Id. at p. 16.

        Petitioner has exhausted his available administrative remedies.

## ARGUMENT

A.      Petitioner Is Not Entitled To Relief Because He Has No Protected
        Liberty Interest In Any Particular Custody Classification

Petitioner contends that due to his offense being classified as a Greatest

Severity offense, and the application of the corresponding Greatest Severity PSF, he

_____

    [3]Petitioner's reliance upon United States v. Booker, — U.S. —, 125 S.Ct. 738
(2005), for the proposition that the BOP cannot rely upon facts contained in the
PSR in determining the execution of a lawfully imposed sentence is wholly
misplaced.

is "being systematically denied the opportunity to benefit from reduced custody level points . . .which substantially affects petitioner's liberty interest." <u>See</u> Petition, p. 6. Petitioner requests that he "be afforded the same opportunity given other inmates to be placed in the less restrictive environment of a prison camp." <u>Id</u>. Petitioner's argument must fail, because inmates do not have a protected liberty interest in custody classification or designation to a particular institution.

It is well established that the BOP has the authority to chose the facility in which an inmate will serve their term of imprisonment. <u>See</u> 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of . . . imprisonment"); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Thye v. United States</u>, 109 F.3d 127, 130 (2d. Cir. 1997)("Decisions to place a convicted defendant within a particular treatment program or a particular facility are decisions within the sole discretion of the Bureau of Prisons."); <u>United States v. Bakeas</u>, 987 F.Supp.44, 49 n.7 (D.Mass. 1997)("Whether a sentencing court can consider the conditions of confinement in imposing sentence, and shape the sentence accordingly, is a different issue from whether it can direct the Bureau of Prisons where to carry out the sentence. The former involves the proper exercise of judicial discretion, the latter would involve judicial encroachment on executive decision.").

A liberty interest in a prisoner may arise either under the Due Process Clause

of the Constitution itself or it may arise from certain statutes or regulations.  In

<u>Sandin v. Connor</u>, 515 U.S.472 (1995), the Supreme Court explained that liberty

interests created by prison regulations are limited to instances where such

regulations impose atypical and significant hardship on an inmate in relation to the

ordinary incidents of prison life.  <u>Sandin</u>, 515 U.S. at 484.  Petitioner has failed to

establish how the assignment of a Greater Security PSF will cause him to suffer any

atypical and significant hardship over and above the ordinary incidents of prison

life.

    Application of a PSF is not punitive, but rather used for classification and

management purposes to ensure each inmate is subject to appropriate security

measures for the protection of society.  <u>See</u> Document 1b, Ch. 7, p. 1.  It is well

settled that, in general, an inmate does not have a liberty interest to a particular

security classification.  <u>See</u> <u>e.g.,</u> <u>Sandin</u>, <u>supra</u>; <u>Olim v. Wakinekona</u>, 461 U.S. 238,

245 (1983);  <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976);  <u>Montanye v.

Haymes</u>, 427 U.S. 236, 243 (1976).

    As long as the conditions or degree of confinement fall within the sentence

imposed and do not otherwise violate the Constitution, the Due Process Clause does

not bring the prisoner's custody status within the purview of judicial scrutiny. <u>See

Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976).  In this instance, Petitioner did not

suffer an atypical or significant hardship in the context of prison life merely by having his offense classified as Greatest Severity or having the Greatest Severity PSF applied to his case.

> B.    Assuming A Protected Liberty Interest, The Claim Fails As Petitioner Was Appropriately Assigned A PSF Of Greatest Severity

Bureau of Prisons institutions are grouped into five different security levels: Minimum, Low, Medium, High, plus an Administrative category. See Document 1b, Ch. 1, p. 1. The security level of an institution is determined by its physical characteristics, such as the presence of mobile patrol officers, gun towers, and perimeter barriers, among several other factors. Id. at Ch. 1, pp. 1-2. The assignment of an inmate to a particular institution is based upon a number of interacting factors, such as the inmate's program needs, judicial recommendations, and the inmate's release residence. Id.

An inmate's security level is calculated by awarding points in a variety of categories, such as presence of a detainer, public safety factors, length of incarceration, history of violence, etc. See Document 1b, Ch. 5, pp. 5-17. The sum of the points in each category typically determines the inmate's security level. Id. One category staff must evaluate as part of this calculation is the severity of the current offense. See Document 1b, Ch. 5, p. 6-7. A Greatest Severity offense is defined, in relevant part, as:

6

> Any drug offender whose current offense includes the following
> criteria shall be scored in the Greatest severity category:  The
> offender was part of an organizational network and he or she
> organized or maintained ownership interest/profits from large-
> scale drug activity, ***AND*** the drug amount equals or
> exceeds the amount below: . . . Marijuana - greater than or equal
> to 620,000 gm, 620 K, or 1,367 lb.

See Document 1b, Appendix B, p. 1.  An inmate with a PSF for Greatest Severity

"shall be housed in at least a Low security level institution, unless the PSF has been

waived."  See Document 1b, Ch. 7, p.1.

Petitioner's PSR "indicates [he was] an organizer, leader, manager, or

supervisor in a drug trafficking organization responsible for the distribution of the

Ecstacy pills equivalent to that of 2,614.08 kilograms of marijuana."  See

Document 1h.  Based on the information in the PSR, it was determined that

Petitioner met the criteria for a Greatest Severity offense as defined above by the

Program Statement.  Thus, his offense was appropriately determined to be a

Greatest Severity offense.  See Document 1c, Security/Designation Data for inmate

Angelo Karagelidis, Reg. No. 22989-038, dated July 20, 2005, attached to the

Declaration of Stephanie Scannell.[4]

---

[4]Public Safety Factors are "applied to inmates who are not appropriate for
placement at an institution which would permit inmate access to the community
(i.e., MINIMUM security)."  Id.  The placement of a PSF ensures the appropriate
security level is assigned to an inmate based on demonstrated current or prior

C.    Petitioner's Request Is Moot

Petitioner seeks habeas relief alleging that the erroneous assignment of the Greatest Severity PSF deprives him of the opportunity to seek a lower custody level, such as camp placement. On May 12, 2005, Petitioner's Unit Team recommended him for placement in a CCC "to aid his lawful society reintegration as he will require assistance seeking gainful employment." See Document 1d, Institutional Referral for CCC Placement, attached to the Declaration of Stephanie Scannell. Petitioner was subsequently transferred to a CCC on September 13, 2005, where he is currently housed.

Petitioner is presently housed in a less restrictive facility than he would have been had the complete relief sought by way of the petition been afforded. Thus, the claim is moot in that there is no longer any meaningful relief that can be afforded by this Court.

---

behaviors. Id. There are nine PSFs: 1) Disruptive Group; 2) Greatest Severity; 3) Sex Offender; 4) Threat to Government Officials; 5) Deportable Alien; 6) Sentence Length; 7) Violent Behavior; 8) Serious Escape; and 9) Prison Disturbance.

<u>CONCLUSION</u>

For the reasons discussed above, Petitioner's Petition for Writ of Habeas

Corpus under 28 U.S.C. § 2241 should be dismissed.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

 /s/ Mark J. Grady
MARK J. GRADY
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA   02210
Tel. No. (617) 748-3136

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANGELO KARAGELIDIS,                )
     Petitioner,                        )
                                   )
v.                                 )          Civ. Action No. 05-CV-11846
                                   )
U.S. DEPARTMENT OF JUSTICE,        )
     Respondent                         )
                                   )

## DECLARATION OF STEPHANIE SCANNELL

I, Stephanie Scannell, hereby make the following declaration:

1.  I am currently employed by the Federal Bureau of Prisons (BOP) of the United States Department of Justice as a Paralegal Specialist at the Consolidated Legal Center located at the Federal Medical Center (FMC) in Devens, Massachusetts. I have been employed at this position since approximately March 9, 2003, and have been with the BOP since October 6, 2002.

2.  In order to perform my official duties as Paralegal Specialist, I have access to numerous records regarding prisoners maintained in the ordinary course of business at FMC Devens and other BOP institutions. This information includes, but is not limited to, documentary records, Judgment and Commitment files, and computerized records maintained on SENTRY, the Bureau of Prisons computerized data base.

3.  I have access to the various databases and files concerning administrative remedy claims filed pursuant to the Administrative Remedy Program, which are maintained by the Bureau of Prisons in the ordinary course of business. In particular, I have access to SENTRY, which maintains a record of all of the administrative remedies filed by an inmate, the dates thereof, and the dispositions. These records reflect every administrative remedy claim filed by an inmate in the Bureau of Prisons, while housed in any federal institution of the Bureau of Prisons. Records indicate that Petitioner has exhausted his administrative remedies with respect to the issue that is the subject of this Petition. A true and accurate copy of the Administrative Remedy Generalized Retrieval for inmate Angelo Karagelidis, Reg. No. 22989-038, is attached as **Document 1f**.

4.  Pursuant to Bureau of Prisons Program Statement 1351.05, <u>Release of Information</u> (September 19, 2002), inmates may not possess their Presentence Investigation Reports (PSRs) or the Statement of Reasons (SORs), which are commonly appended to Judgment and Commitment Orders. Inmates who wish to review these documents may access, review, and make notes from these documents upon submission of a request to a member of their Unit Team.

5.    I have reviewed the PSR for inmate Angelo Karagelidis, Reg. No. 22989-038, which is maintained in the ordinary course of business at FMC Devens. On pages 27 and 28 of inmate Karagelidis' PSR, the following language appears at paragraphs 120(o) and 120(p):

> Based upon a preponderance of the evidence, the transactions listed above support a finding that the offense involved approximately 311, 200 Ecstasy pills. 311, 200 pills x .24 grams per pill yields a total weight of 74,688 grams of Ecstasy. 74,688 x 35 (marijuana equivalency conversion per [U.S.S.G.] § 2D1.1) = the equivalent of 2,614,080 grams, or 2,614.08 kilograms of marijuana.
>
> . . . Thus, a preponderance of evidence supports a finding that Karagelidis made three trips to New York per month over the four month period (October 1999 to February 2000) to obtain 1 kilogram of cocaine on each trip resulting in a total of 12 kilograms of cocaine. Pursuant to the   Drug Equivalency Table in § 2D1.1, one gram of cocaine is equivalent to 200 grams of marijuana. Hence, 12 kilograms of cocaine (12,000 grams) is equivalent to 2,400 kilograms of marijuana (12,000 x 200 = 2,400,000/1,000 = 2,400).

6.    On page 28 of inmate Karagelidis' PSR, the following language appears at paragraph 123(a):

> . . . Thus, the defendant was an organizer, leader, manager, or supervisor in the Ecstasy conspiracy and the offense level is increased by two levels pursuant to U.S.S.G. § 3B1.1(c).

7.    Attached hereto, please find true and correct copies of the following documents:
   a.    Public Information Data, dated January 13, 2006, for inmate Angelo Karagelidis, Reg. No. 22989-038;
   b.    Program Statement 5100.07, Security Designation and Custody Classification Manual (attached in relevant part);
   c.    Security/Designation Data for inmate Angelo Karagelidis, Reg. No. 22989-038, dated July 20, 2005;
   d.    Institutional Referral for CCC Placement;
   e.    Security/Designation Data for inmate Angelo Karagelidis, Reg. No. 22989-038, dated January 13, 2006;
   f.    Administrative Remedy Generalized Retrieval for inmate Angelo Karagelidis, Reg. No. 22989-038;
   g.    Request for Administrative Remedy, Case Number 321615-F1, and Response;
   h.    Regional Administrative Remedy Appeal, Case Number 321615-R1, and Response;
   i.    Central Office Administrative Remedy Appeal, Case Number 321615-A2, and Response.

I declare the foregoing is true and correct to the best of my knowledge and belief, and given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this 18 day of January, 2006

Stephanie J. Scannell
Paralegal Specialist
FMC Devens

```
    DEVAA          *        PUBLIC INFORMATION              *        01-13-2006
    PAGE 001       *           INMATE DATA                  *        10:41:52
                              AS OF 01-13-2006
```

REGNO..: 22989-038 NAME: KARAGELIDIS, ANGELO

```
                    RESP OF: CBN / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 617-565-4293    FAX: 6₺7-565-4297
                                             RACE/SEX...: WHITE / MALE
    FBI NUMBER.: 722328MB4                   DOB/AGE....: ████████ / 34
    PROJ REL MT: GOOD CONDUCT TIME RELEASE   PAR ELIG DT: N/A
    PROJ REL DT: 03-10-2006                  PAR HEAR DT:
    -------------------------- ADMIT/RELEASE HISTORY --------------------------
    FCL   ASSIGNMENT  DESCRIPTION                START DATE/TIME STOP  DATE/TIME
    CBN   A-DES       DESIGNATED, AT ASSIGNED FACIL 09-13-2005 1007 CURRENT
    7-F   RELEASE     RELEASED FROM IN-TRANSIT FACL 09-13-2005 1007 09-13-2005 1007
    7-F   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 09-13-2005 0804 09-13-2005 1007
    DEV   FURL TRANS  FURL W/UNESCORTED TRF TO A CCC 09-13-2005 0804 09-13-2005 0804
    DEV   A-DES       DESIGNATED, AT ASSIGNED FACIL 10-09-2002 1419 09-13-2005 0804
    S18   RELEASE     RELEASED FROM IN-TRANSIT FACL 10-09-2002 1419 10-09-2002 1419
    S18   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 10-09-2002 1144 10-09-2002 1419
    BRO   HLD REMOVE  HOLDOVER REMOVED              10-09-2002 1144 10-09-2002 1144
    BRO   A-HLD       HOLDOVER, TEMPORARILY HOUSED  09-12-2002 1652 10-09-2002 1144
    0-P   RELEASE     RELEASED FROM IN-TRANSIT FACL 09-12-2002 1652 09-12-2002 1652
    0-P   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 09-04-2002 1146 09-12-2002 1652
    CBN   ADMIN REL   ADMINISTRATIVE RELEASE        09-04-2002 1146 09-04-2002 1146
    CBN   A-ADMIN     ADMINISTRATIVE ADMISSION      09-04-2002 1131 09-04-2002 1146
    RBK   PRE REMOVE  PRE SENT DETAINEE REMOVED     07-16-2002 1154 09-04-2002 1131
    RBK   A-PRE       PRE-SENT ADMIT, ADULT         06-06-2002 1228 07-16-2002 1154
```

```
    G0002      MORE PAGES TO FOLLOW . . .
```

```
   DEVAA          *          PUBLIC INFORMATION          *     01-13-2006
   PAGE 002        *            INMATE DATA              *     10:41:52
                                AS OF 01-13-2006

REGNO..: 22989-038 NAME: KARAGELIDIS, ANGELO

                 RESP OF: CBN / DESIGNATED, AT ASSIGNED FACIL
                 PHONE..: 617-565-4293    FAX: 617-565-4297
PRE-RELEASE PREPARATION DATE: 09-10-2005

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  03-10-2006 VIA GCT REL

---------------------CURRENT JUDGMENT/WARRANT NO: 010 ------------------------

COURT OF JURISDICTION...........: VERMONT
DOCKET NUMBER...................: 2:00-CR-11-01
JUDGE...........................: SESSIONS
DATE SENTENCED/PROBATION IMPOSED: 07-24-2002
DATE COMMITTED..................: 10-09-2002
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                 FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $100.00         $00.00          $00.00       $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

-------------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....:  391
OFF/CHG: T21:841,846 CONSPIRACY TO DISTRIBUTE ECSTACY

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   84 MONTHS
 TERM OF SUPERVISION............:    3 YEARS
 DATE OF OFFENSE................: 03-01-2000




G0002      MORE PAGES TO FOLLOW . . .
```



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program
# Statement

**OPI:** CPD
**NUMBER:** 5100.07
**DATE:** 9/3/99
**SUBJECT:** Security Designation and
Custody Classification
Manual

1. **PURPOSE AND SCOPE.** To transmit a Manual of policy and instructions for designating and redesignating inmates. Inmates will be designated/redesignated to institutions based on:

- security criteria,
- inmate program needs, and
- other correctional administrative factors.

This Manual also provides instructions regarding inmate custody classifications.

2. **PROGRAM OBJECTIVES.** The expected results of this program are:

   a. Each Bureau institution will be assigned a security level based on established criteria.

   b. Inmates will be placed in facilities commensurate with their security and program needs through an objective system of classification.

   c. Inmates and staff will live and work in environments made safer by objective inmate classification guidelines applied with sound correctional judgment.

   d. The public will be protected from undue risk.

   e. Planning and development of new institutions will be enhanced by reliable data based on the security needs of the Bureau's inmate population.



**INTRODUCTION**

Bureau of Prisons institutions are grouped into security levels: **MINIMUM, LOW, MEDIUM, HIGH,** plus an **ADMINISTRATIVE** category. Seven factors are required to support an institution's security level:

■ mobile patrol,
■ gun towers,
■ perimeter barriers,
■ detection devices,
■ internal security,
■ housing, and
■ inmate-to-staff ratio.

Upon receipt of the U.S. Marshals request to place an inmate at a Bureau institution, the Community Corrections Manager assesses the offender's security and program needs, as well as other administrative factors unique to a correctional environment.

The assignment of an inmate to a particular institution is based upon:

    The level of security and supervision the inmate requires;

    The level of security and staff supervision the institution is able to provide;

    The inmate's program needs, i.e., substance abuse, educational/vocational training, individual and/or group counseling, medical/mental health treatment; and,

    Various administrative factors such as, but not limited to,

            ● level of overcrowding,
            ● the inmate's release residence,
            ● judicial recommendations,
            ● separation needs,
            ● increased security measures to ensure the protection of victims/witnesses and the public in general.

There are two distinct systems of classification; one for male and one for female offenders. While each classification item is reviewed for each gender, different points may be assessed for the item. The point difference is a result of research conducted

which indicates that men and women do not react the same in
similar situations.

Initial designations to Bureau (**or** BOP) institutions are
accomplished by:

    (1) Community Corrections Managers entering information into
a computer database (SENTRY) to compute a security score, and
    (2) Regional and/or Central Office Designators designating
an institution based on the score.

A Security/ Designation Data form is required for any inmate with
a sentence exceeding **30 days.** Designations to non-federal
facilities may also be completed by Community Corrections
Managers. Redesignations (transfers) from one Bureau institution
to another are also accomplished by Regional and Central Office
staff based upon many of the same factors used at the time of
initial designation.

The Custody Classification Form (BP-338) may indicate reduced or
increased security requirements based on consideration of both
pre-commitment and post-commitment variables. Four inmate
custody levels are established: **MAXIMUM, IN, OUT, and COMMUNITY.**
The lowest level of custody, **COMMUNITY,** is ordinarily reserved
for those inmates who meet the qualifications for participation
in community activities.

This Manual establishes guidelines for designating the place of
imprisonment for each individual. These guidelines are
consistent with statutory authority as contained in
18 U.S.C. § 3621(b). All designation and transfer decisions are
made without favoritism given to an individual's social or
economic status.

```
┌─────────────────────────┐
│      DEFINITIONS        │
└─────────────────────────┘
```

**ADMINISTRATIVE INSTITUTIONS**.  Institutions with special missions.
Inmates are assigned based on factors other than security and/or
staff supervision (for example, medical/mental health, pretrial
and holdover).  Administrative institutions are designed to
securely house all security level inmates.

**CASE MANAGEMENT COORDINATOR (CMC)**.  Each institution has a Case
Management Coordinator.  The CMC assists other department heads
and members of the administration relative to correctional
programs issues, serves correctional programs line staff as an
expert in correctional programs policy, and is a resource person
when addressing inmate program issues.

**CENTRAL INMATE MONITORING (CIM)**.  The Bureau monitors and
controls the transfer, temporary release, and community
activities of certain inmates who present special needs for
management.  Such inmates, known as Central Inmate Monitoring
cases, require a higher level of review.  A higher level of
review is required prior to any inmate movement away from the
institution.

**CLASSIFICATION**.  The systematic subdivision of inmates into
groups based on their security and program needs.

**COMMUNITY CORRECTIONS MANAGER (CCM)**.  Community Corrections
Managers are responsible for all functions, programs, and
services related to community corrections in their assigned
judicial districts.  This includes Community Corrections Centers
(CCCs/halfway houses), local jail facilities, and Home
Confinement.

**COMMUNITY CUSTODY**.  The lowest custody level assigned to an
inmate which affords the lowest level of security and staff
supervision.  An inmate who has Community custody may be eligible
for the least secure housing, including any which is outside the
institution's perimeter, may work on outside details with minimal
supervision, and may participate in community-based program
activities if other eligibility requirements are satisfied.

**CONTRACT FACILITY**.  A state or local prison, institution,
facility, jail, or other non-federal enterprise that contracts
with the Bureau to house federal inmates (i.e., Community
Corrections Center).  Contract facilities are contracted and
supervised by the CCMs.

**CURRENT OFFENSE**. For the purpose of classification, the current offense is the most severe offense for which the inmate is satisfying his or her legal confinement obligation. For multiple offenses, the highest score will be used in scoring the current offense. Staff shall consider the offense behavior on all sentences, including federal sentences that have a future beginning date or a previous D.C. or state sentence if there was no **physical** release from custody. If there was a physical release, then that offense behavior is considered a prior commitment.

**CUSTODY CLASSIFICATION**. The review process to assign a custody level based on an inmate's criminal history, instant offense, and institutional adjustment. A custody level (i.e., **COMMUNITY, OUT, IN**, and **MAXIMUM**) dictates the degree of staff supervision required for an individual inmate.

**D.C. CONVERSION CASE**. An inmate serving a federal sentence in Bureau custody who has a consecutive D.C. sentence (or a concurrent D.C. sentence which will extend beyond the release date of the federal sentence).

**DESIGNATION**. An order from the Regional Office, Central Office, Community Corrections Manager (CCM), or Central Office Medical Designator, in the Office of Medical Designations and Transportation, (OMDT) indicating the initial facility of confinement for an inmate.

**DESIGNATION FACILITY (DFCL)**. Each of the separate missions within an institution for designation purposes. Each DFCL is shown as a separate line on the Population Report and has its own security level and destination (DST) assignment. Designations are made to a DFCL code rather than to a facility (FACL) code.

**JUDGMENT**. The official court document (e.g., Judgment and Commitment Order or Judgment in a Criminal Case) which is signed by the Judge stating a conviction and ordering a sentence.

**HISTORY**. The inmate's entire background of criminal convictions and disciplinary history, excluding the current term of confinement.

**IN CUSTODY**. The second highest custody level assigned to an inmate which requires the second highest level of security and staff supervision. An inmate who has **IN** custody is assigned to regular quarters and is eligible for all regular work assignments and activities under a normal level of supervision. Inmates with

**IN** custody are not eligible for work details or programs outside the institution's secure perimeter.

**MANAGEMENT SECURITY LEVEL (MSL)**. Management Security Level is the security level assigned by the Regional Director or Designee to an inmate upon application of any of the following Management Variables:

- PSF Waived;
- Greater Security; and
- Lesser Security.

Based on these Management Variables, the Management Security Level will normally be one security level greater or lesser than the scored security level.

**MANAGEMENT VARIABLES**. Management Variables (MGTVs) reflect and support the professional judgment of Bureau staff to ensure the inmate's placement in the most appropriate level institution. Management Variables are required when placement has been made and/or maintained at an institution level inconsistent with the inmate's security score — a score which may not completely/ accurately reflect his or her security needs.

**MAXIMUM CUSTODY**. The highest custody level assigned to an inmate requiring the highest level of security and staff supervision. An inmate with Maximum custody requires ultimate control and supervision. This classification is for individuals who, by their behavior, have been identified as assaultive, predacious, riotous, serious escape risks, or seriously disruptive to the orderly running of an institution. Accordingly, quarters and work assignments are assigned to ensure maximum control and
\*    supervision. A custody change to or from Maximum custody must be justified thoroughly on the BP-338 form and maintained permanently in the Inmate Central File.    \*

**MISDEMEANANT**. An inmate convicted of an offense for which the maximum penalty is one year or less. Such inmates may not be transferred to a High security institution without first signing a waiver. 18 U.S.C. § 4083 prohibits placement of such inmates in "penitentiaries" without their consent; however, the Bureau broadens that prohibition to include any High security institution. A sample of the waiver is provided in Appendix D.

**OUT CUSTODY**. The second lowest custody level assigned to an inmate requiring the second lowest level of security and staff supervision. An inmate who has **OUT** custody may be assigned to less secure housing and may be eligible for work details outside the institution's secure perimeter with a minimum of two-hour intermittent staff supervision.

**PAROLE, MANDATORY RELEASE, OR SPECIAL PAROLE TERM VIOLATOR**.
Violators are inmates who were released from Bureau custody to
the supervision of a D.C. or U.S. Probation Officer (USPO) and
are suspected of violating the conditions of their release.
These violators are returned to Bureau custody and are required
to have a parole hearing within certain time limits.  The purpose
of this is to provide the inmate with an in-person hearing before
the U.S. Parole Commission (USPC) to determine if the inmate has
violated the conditions of parole, mandatory release, or special
parole.  Therefore it is necessary to temporarily place these
individuals at parolable institutions in order to conduct parole
hearings.

**PRIOR COMMITMENT**.  A period of incarceration (for any length of
time) served previous to the present period of incarceration.
For classification purposes, the inmate must have been **physically**
released from custody for a sentence to be considered a prior
commitment.  For example:

> An inmate serving a D.C. or state sentence in federal
> custody with a consecutive federal sentence - once the
> inmate begins serving the consecutive federal sentence, the
> D.C. or state sentence is not considered a prior commitment
> since the inmate remains in continuous confinement;
> likewise, no "history" points are assessed.  Additionally,
> if the state sentence is a greatest severity offense level,
> the greatest offense would continue to be "current offense."

> For consistency, it does not make any difference where the
> inmate serves the D.C. or state sentence.  If an inmate is
> serving a sentence in D.C. or state custody and meets the
> above criteria, then the D.C. or state sentence would still
> be considered the "current offense."  However, if the chain
> of custody is better described in the below example, then
> the D.C. or state sentence would be considered a prior
> commitment.

> An inmate serving a D.C. or state sentence in D.C. or state
> custody releases from the sentence, the USMS assumes
> custody, then the inmate is released on bond - the state
> sentence would be considered a prior commitment, and
> "history" points would be assessed.

**PRIVATIZED FACILITY**.  A prison, institution, or other
correctional facility that is operated or supervised by a non-
governmental entity.  Privatized facilities are managed by
private organizations or individuals with oversight provided by
Bureau staff.

**PUBLIC SAFETY FACTORS**.  There are certain demonstrated behaviors which require increased security measures to ensure the protection of society.  There are nine Public Safety Factors (PSFs) which are applied to inmates who are not appropriate for placement at an institution which would permit inmate access to the community (i.e., MINIMUM security).  The application of a PSF overrides security point scores to ensure the appropriate security level is assigned to an inmate, based on his or her demonstrated current or prior behavior.

**REDESIGNATION**.  The reassignment of an inmate from one institution to another after initial designation.  Unit staff submit a request to the appropriate office, and the inmate's case is reviewed for possible transfer.  Approval of a redesignation results in an order from the Regional Office, Central Office, or CCM indicating a correctional institution to which an inmate is to be transferred.

**RELEASE RESIDENCE**.  The verifiable destination to which an inmate realistically plans to reside upon release from Bureau custody. The inmate is to provide proof of residence to his or her unit staff.  Staff shall rely upon the following references to assist in verification: Presentence Investigation Report/USPO verification; telephone and visiting lists; incoming and outgoing mail.  Attempts shall be made to place inmates in the most appropriate security level institution within 500 miles from his or her release residence.  Based on security needs and population pressures, placement may not always be at the closest institution within a 500-mile radius of a release residence.

**SECONDARY DESIGNATION**.  Designation of an institution to which an inmate is to be moved after completion of some treatment, program, or process.

**SECURITY CUT POINT**.  The numerical break between inmate security levels.

**SECURITY LEVEL**.  Used to describe the structural variables and inmate-to-staff ratio provided at the various types of Bureau institutions (i.e., Minimum, Low, Medium, High).  It also identifies the institution type required to house inmates based on their histories, institutional adjustment, and Public Safety Factors as well as the physical security of the institution to include mobile patrols, gun towers, perimeter barriers, housing, detection devices, inmate-to-staff ratio, and internal security.

**STUDY CASES**.  Study cases are those inmates committed for a
period of study and observation pursuant to 18 U.S.C. §§ 3552(b)
or (c), 4241(b) or (d), 4242(a), 4243(a) or (b), 4244(b),
4245(b), 4246(b), or 4247(b) or (c).  All inmates committed for
study and observation shall be referred to the Central Office
Medical Designator in the Office of Medical Designations and
Transportation (OMDT) for designation to a facility that can
complete the study, considering any specific medical or
psychiatric issues which should be addressed.  The Central Office
Medical Designator should attempt to place the inmate in the most
suitable facility compatible with the offender's security and
custody needs, closest to the court and available resources.

**TRANSFER**.  The actual movement of an inmate from one institution
or facility to another.

**UNIT MANAGER**.  Each unit team is headed by a Unit Manager who
supervises the other primary unit team members which include Case
Managers, Correctional Counselors, and Unit Secretaries.  Unit
teams also include staff representing education, psychology, and
other disciplines contributing to an offender's law-abiding
lifestyle.  The Unit Manager directs the housing unit activities
and is responsible for the unit's operation and quality control
of all correspondence and programs.

**YOUTH CORRECTIONS ACT (YCA)**.  Although YCA statutes were repealed
effective October 12, 1984, an offender originally committed
under these statutes could be returned to custody as a parole
violator.  Questions concerning the appropriate institution for
housing YCA parole violators should be directed to the YCA
Coordinator at FCI Englewood, Colorado.

---

**INMATE LOAD AND SECURITY DESIGNATION FORM INSTRUCTIONS (MALE) BP-337**

---

### INMATE LOAD DATA

1. **Register Number.** Enter the inmate's BOP register number. The U.S. Marshal (USM) assigns an eight-digit register number to each inmate with the last three digits denoting the U.S. Marshals' judicial code. The format is five digits, hyphen, three digits. Leading zeroes are required.

2. **Last Name.** Twenty-four spaces are provided for the inmate's last name. The first character must be a letter. Each subsequent character must be a letter, space, hyphen, or apostrophe. The name used shall be the name under which the inmate is committed on the Judgment.

3. **First Name.** Twelve spaces are provided for the inmate's first name.

4. **Middle.** Eight spaces are provided for the inmate's middle name.

5. **Suffix.** Three spaces are provided for any name suffixes (i.e., Jr., Sr., II). Suffix codes are found in the Name Suffix Code section of the SENTRY General Use TRM.

6. **Race.** Standards for the Classification of Federal Data on Race and Ethnicity are set by the Office of Management and Budget. Enter the appropriate code:

| CODE | RACE | DEFINITION |
|------|------|------------|
| A | Asian | A person having origins in any of the Pacific Islands or any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam. |

PS 5100.07
9/3/99
Chapter 5, Page 2

| CODE | RACE | DEFINITION |
|---|---|---|
| B | Black or African American | A person having origins in any of the black racial groups of Africa. |
| I | American Indian or Alaska Native | A person having origins in any of the original peoples of North and South America (including Central America), and who maintains tribal affiliation or community attachment. |
| W | White | A person having origins in any of the original peoples of Europe, the Middle East, or North Africa. |

7. **Sex.** Enter M = Male.

8. **Ethnic Origin.** Enter the appropriate code.

| CODE | ETHNIC ORIGIN | DEFINITION |
|---|---|---|
| H | Hispanic or Latino | A person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race. |
| O | Not Hispanic or Latino | An inmate who does not meet the above criteria. |

9. **Date of Birth.** Ten spaces are provided for the inmate's birth date (MM-DD-YYYY); leading zeroes are required (e.g., March 7, 1960 = 03-07-1960).

If the inmate's birth date is unknown or not available, enter 01-01-1800.

10. **Offense/Sentence**. Enter the offense(s). Enter the length of sentence, e.g., "5 years," or "2 years, 6 months." **Include court docket number(s) preceding each offense**.

11. **FBI Number**. Nine spaces are provided for the FBI number. It must not duplicate an existing FBI number on the SENTRY database. Leave blank if the inmate is a juvenile or the FBI number is unknown.

12. **Social Security Number (SSN)**. Nine spaces are provided for the inmate's SSN.

    • SSNs must not duplicate an existing Social Security Number on the SENTRY database.

    • Dashes are not keyed.

    • Leave the item blank if the inmate has never been issued an SSN (this may be because he is an illegal alien or the SSN is unknown).

13. **State of Birth**. Two spaces are provided for the state code for the state in which the inmate was born. If entered, it must be a valid code found under State Possession Code, SENTRY General Use Technical Reference Manual (TRM).

14. **Or Country of Birth**. If entered, it must be a valid code found under Country Code, SENTRY TRM. Cannot be "US," and cannot be entered if "state of birth" is entered.

15. **Citizenship**. Enter the country code of which the inmate is a citizen. This must be a valid code found under Country Code, SENTRY TRM. Do not rely on the inmate's current place of residence to determine citizenship. The Bureau no longer notifies the Immigration and Naturalization Service (INS) of aliens in our custody, therefore, special emphasis must be placed on the accuracy of citizenship and demographic information at the time of an inmate's admission. (SENTRY is available to INS.)

16. **Address - Street**. Twenty-eight spaces are provided for the street number(s) and name. Enter any combination of alphanumeric characters.

17. **City**. Fifteen spaces are provided for the city. Enter any combination of alphanumeric characters. If entered, a state or foreign country must be entered.

18. **State.**  Two spaces are provided for the state code.  If
    entered, it must be a valid state code found under State
    Possession Code, SENTRY TRM.  Enter country code under
    item 20 if residence is not in the United States or one of
    its territories or commonwealths.

19. **Zip Code.**  Five spaces are provided for the zip code.  It
    must be entered when a state code has been entered.  If not
    available, the city, state, and zip code of the USMS Office
    assigning the register number shall be entered.

20. **Or Foreign Country.**  Two spaces are provided for the country
    code.  If entered, it must be a valid country code found
    under Country Code, SENTRY TRM.  May not be "US."  This item
    cannot be entered if a state address and zip code have been
    entered.

21. **Height.**  Must be entered in a measurement of feet and
    inches.  Values in feet (FT) must be 1 through 9.  Values in
    inches (IN) must be 00 through 11.

22. **Weight.**  Values in weight must be 001-999 and represent
    pounds.

23. **Hair.**  Two spaces are provided for the color code.  If
    entered, it must be a valid code found under the Hair Color
    Code, SENTRY TRM.

24. **Eyes.**  Two spaces are provided for the color code.  If
    entered, it must be a valid code found under the Eye Color
    Code, SENTRY TRM.

25. **ARS Assignment.**  Use a valid SENTRY category assignment,
    SENTRY TRM.

### UPDATE NICKNAMES AND ALIASES

The committed name is that name which is present on the Judgment.
However, inmates often have additional names and nicknames with
which they identify.  In addition to load data, CCM staff shall
enter into SENTRY **all available names** (including legal names,
maiden names, AKAs, true names, nicknames, etc.).  A Court Order
is needed to honor a legal name which differs from the Judgment.
Institution staff shall be responsible for updating names in
SENTRY as necessary.  Inmate names are entered via the Update
Nicknames and Aliases transaction.

### SECURITY DESIGNATION DATA

1. **PUBLIC SAFETY FACTORS.** See Chapter 7, pages 1-8.

2. **USM OFFICE.** Enter the location of the USM Office
(e.g., E/VA-NOR).

3. **JUDGE.** Enter the sentencing Judge's last name.

4. **RECOMMENDED FACILITY.** Enter the name of the institution
recommended. The court may recommend a specific institution or a
geographical region for a newly committed inmate. If a specific
SENTRY facility code is entered, that facility will appear at the
top of the list presented to the designators for consideration.

5. **RECOMMENDED PROGRAM.** Enter the name or type of any program
recommendations by the Judge.

6. **TYPE OF DETAINER.** Enter the appropriate number of points in
the box in the right-hand column to reflect detainer status.
Refer to the Offense Severity Scale, Appendix B. Determination
is based on the offense of the most serious detainer.

   a. If there is a pending charge, points based on the
documented **behavior** are assigned on the Type of Detainer item
(Security Designations Data, Item #6, BP-337). If the pending
charges or detainer involve a **probation** violation, **use the most
severe documented behavior in the original offense** as the basis
for assigning points in the detainer scoring in Table 5-1.

   If law enforcement officials indicate a firm intent to lodge a
detainer, consider it lodged. Score a concurrent state sentence
as a detainer only if it is expected that the state sentence
shall exceed the federal sentence. However, score consecutive
state sentences, lodged state detainers, and/or state parole
violation terms/warrants as detainers.

   b. Consecutive federal sentences are ordinarily not lodged as
detainers because federal sentences are computed as they are
received. If there is more than one sentence, the most severe
offense will be used as "Severity of Current Offense."

   c. **No points shall be awarded for U.S. Parole Commission
warrants (adjudicated or unadjudicated).** However, original
offense behavior shall be scored as a prior and the violation
behavior (including new offense behavior) shall be scored as the
instant offense.

d.  No points shall be awarded for INS detainers.  However, each case shall be carefully reviewed to determine whether the PSF for Deportable Alien is applicable.

**Table 5-1**

| TYPE OF DETAINER | |
|---|---|
| POINTS | DETAINER OFFENSE LEVEL |
| 0 | None/Deportation |
| 1 | Lowest and Low Moderate Severity |
| 3 | Moderate Severity |
| 5 | High Severity |
| 7 | Greatest Severity |

**Example:** For an individual with two detainers for Violation of Firearms Act (Moderate severity level) and one for Extortion (High severity level), use High = 5 points and enter "5" in the box in the right-hand column.

7.  **SEVERITY OF CURRENT OFFENSE.**  Enter the appropriate number of points in the box in the right-hand column to reflect the most severe documented instant offense **behavior.**  For multiple offenses, the highest score will be used in scoring the current offense.  Staff shall consider the offense behavior on all sentences, including federal sentences that have a future beginning date or a previous D.C. or state sentence if there was no **physical** release from custody.

**Note:** This will require CCM staff to make reasonable efforts to obtain documentation.

Severity is determined by using the Offense Severity Scale (Appendix B).  Do not use this same information to assign points on the History of Escape or Attempts/History of Violence items (numbers 10 and 11 on the Security Designation data section of the BP-337).

**In determining "Severity of Current Offense" staff shall review the <u>Statement of Reasons</u>, if provided, (attachment to the Judgment) and ensure the information provided is appropriately used in classifying the inmate.**

**Table 5-2**

| SEVERITY OF CURRENT OFFENSE | |
|---|---|
| POINTS | SEVERITY |
| 0 | Lowest |
| 1 | Low Moderate |
| 3 | Moderate |
| 5 | High |
| 7 | Greatest |

**Example:** According to the PSI, the individual was involved in an Assault With Serious Injury (Greatest severity level) but pled guilty to a Simple Assault (Moderate severity level). Assign the points on the basis of the more severe documented behavior, i.e., assign 7 points (Greatest severity level). Do not use the current offense information to assign points on the "history" items (numbers 10 and 11 on the Security Designation Data section of the BP-337).

### PROCEDURES FOR PAROLE, MANDATORY RELEASE, SPECIAL PAROLE TERM, OR SUPERVISED RELEASE VIOLATOR

a.   If the violation was the result of new criminal conduct, regardless of conviction status, use the new criminal conduct for scoring "Severity of Current Offense" (see Appendix B - Offense Severity Scale). If the violation behavior was a technical violation, score the "Severity of Current Offense" as Low Moderate.

b.   The original offense behavior which occurred prior to the violation is considered past behavior and is not used in determining "Severity of Current Offense."

### PROCEDURES FOR PROBATION VIOLATOR

a.   The original offense behavior that resulted in probation should be used for scoring "Severity of Current Offense" (see Appendix B - Offense Severity Scale).

b.   However, if the new criminal conduct (violation behavior) is more severe than the original offense behavior, then use this behavior for scoring "Severity of Current Offense." **THE MOST SEVERE DOCUMENTED BEHAVIOR BETWEEN THE ORIGINAL OFFENSE AND THE**

**VIOLATION BEHAVIOR SHALL BE USED FOR SCORING "SEVERITY OF CURRENT OFFENSE."**

8. **MONTHS TO RELEASE.** This item shall reflect the estimated number of months the inmate is expected to be incarcerated. Consecutive **federal** sentences shall be added together for classification purposes. Federal sentences may have different beginning dates, based on the Judgment Orders. There may even be a computation in SENTRY with a beginning date in the future. Based on the inmate's sentence(s), enter the total number of months remaining, less 15% (for sentences over 12 months), and credit for any jail time served. **This item** is not figured into the security point total but **impacts the Sentence Length PSF.**

---

**Note:  For any old-law inmate serving a LIFE sentence for whom a parole date has not been established, 540 months shall be entered for this item.  Death Penalty cases will be treated as LIFE sentences for scoring purposes.**

---

**Example 1:**  An adult convicted of Breaking and Entering under the SRA provisions is sentenced to eight years.  The expected length of incarceration is (96 x 85% = 81.6).  Round to the nearest whole number to get 82 and subtract any jail time credit (180 days) = 76 months to release.

9. **TYPE OF PRIOR COMMITMENTS.**  In the right-hand column, enter the appropriate number of points reflecting the category of **prior commitment** history.  This is determined by **prior institution incarceration** and is based on the most severe offense behavior (using the Offense Severity Scale, Appendix B) which resulted in commitment.  If an inmate is currently serving concurrent and/or consecutive sentences, whether they are federal, D.C., state, or local, none of the other sentences shall be scored as priors until there has been a break in service, i.e., **physical** release. Review the definition and examples in Chapter 2 for further instruction.  Commitment is defined as any term for which the individual has been confined and is scored as follows:

- Minor = Lowest or Low Moderate

- Serious = Moderate, High, or Greatest

Documented information from juvenile or YCA adjudications can be used, unless the record has been expunged or vacated.

**Table 5-3**

| TYPE OF PRIOR COMMITMENTS | |
|---|---|
| POINTS | TYPE |
| 0 | None |
| 1 | Minor |
| 3 | Serious |

10.  **HISTORY OF ESCAPE OR ATTEMPTS.**  Enter the appropriate number of points in the right-hand column to reflect the escape history of the individual **considering only those acts for which there are documented findings of guilt** (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation).  Escape history includes the individual's entire background of escapes or attempts to escape from confinement, or absconding from community supervision, **excluding the current term of confinement;**

>   **(**Exception:** Any institution disciplinary hearing (UDC or DHO) finding of commission of a prohibited act committed during the current term of confinement is to be scored as a history item.**)**

CCMs must review the Chronological Disciplinary Record (CDR) for inmates who were previously housed in a federal institution.  Any escape(s) or attempt(s) reflected on the CDR must be scored as a history item.  **State disciplinary findings are to be scored unless** there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

Failure to Appear for misdemeanor traffic (automobile) violations, and runaways from foster homes are not to be scored. However, Failure to Appear for or Flight to Avoid Prosecution for serious offenses involving the operation of an automobile, such as Vehicular Homicide or Leaving the Scene of an Accident that resulted in serious bodily harm must be counted **when there is a documented finding of guilt.**

In determining time frames, use the date of the documented occurrence.  Documented information from juvenile or YCA adjudications can be used unless the record has been expunged or vacated.

**Table 5-4**

| HISTORY OF ESCAPE OR ATTEMPTS | | |
|---|---|---|
| POINTS | HISTORY | DEFINITION |
| 0 | None | No history of escape |
| 1 | > 10 Minor | An escape from an open institution or program (e.g., minimum security facility, CCC, furlough) not involving any actual or threat of violence.  Also includes military AWOL, Bail Reform Act, Flight to Avoid Prosecution, and Absconding from Community Supervision.  **There must be a finding of guilt.** |
| 2 | 5 - 10 Minor | |
| 3 | <   5 Minor | |
| S * | Any Serious Escape Regardless of time period | An escape from secure custody with or without threat of violence.  Also includes escapes from an open facility or program with actual threat of violence.  **There must be a finding of guilt.**<br><br>* S = 3 pts. and requires application of PSF (L) |

**Example:**  An inmate was sentenced for Failure to Appear while on bail for the current offense.  The individual was also found guilty for escape from a county jail six years ago by sawing through the bars.  Exclude Failure to Appear because it is a part of the current offense.  Include escape from county jail (serious) = 3 points.  Enter S in the box in the right-hand column and add the Serious Escape PSF.

11. **HISTORY OF VIOLENCE.**  Enter the appropriate number of points in the right-hand column to reflect any history of violence, **considering only those acts for which there are documented findings of guilt** (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation).  This item includes the individual's entire background of criminal violence, **excluding the current term of confinement;**

> (**\*\*Exception:** Any institution disciplinary hearing (UDC or DHO) finding of commission of a prohibited act committed during the current term of confinement must be scored as a history item.**\*\*)**

CCMs must review the Chronological Disciplinary Record (CDR) for inmates who were previously housed in a federal institution or contract facility.  Any violent act(s) reflected on the CDR must be scored as a history item.  **State disciplinary findings must be scored unless** there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

Severity of violence is defined according to the offense behavior which resulted in a **conviction or finding of guilt.**  History of Violence points combine both seriousness and recency of prior violent incidents to measure risk for violent behavior, when more points mean greater risk.  Therefore, if there is more than one incident of violence, score the combination of seriousness and recency that yields the highest point score.  Prior periods of incarceration will be considered a "history" item if the inmate was **physically** released from custody and then returned to serve either a violation or a new sentence.  In determining time frames, use the date of the documented behavior.  Documented information from juvenile or YCA adjudication can be used unless the record has been expunged or vacated.

**Table 5-5**

| HISTORY OF VIOLENCE | | |
|---|---|---|
| POINTS | YEARS | DEFINITION |
| 0 | None | No history of violence |
| 1 | > 10 Minor | Aggressive or intimidating behavior which **is not** likely to cause serious bodily harm or death (e.g., simple assault, fights, domestic disputes, etc.) **There must be a finding of guilt.** |
| 3 | 5 - 10 Minor | |
| 5 | < 5 Minor | |
| 2 | > 15 Serious | Aggressive or intimidating behavior which **is** likely to cause serious bodily harm or death (e.g., aggravated assault, domestic violence, intimidation involving a weapon, incidents involving arson or explosives, rape, etc.).  **There must be a finding of guilt.** |
| 4 | 10 - 15 Serious | |
| 6 | 5 - 10 Serious | |
| 7 | < 5 Serious | |

*    **Example:**  If an offender was found guilty of homicide 20 years
ago and a simple assault 3 years ago, assign 5 points for the
simple assault.  Or in another case, the offender had guilty
findings for homicide 12 years ago; aggravated assault 8 years
ago; and fighting 2 years ago, score 6 points for the aggravated
assault 8 years ago.                                          *

**Note:  Attempted suicide, self-mutilation and possession of
weapons are not applicable behaviors for History of Violence
scoring.  In addition, verbal threats (such as Code 203-
Threatening Bodily Harm) are to be viewed as minor violence.**

12.    **PRECOMMITMENT STATUS.**  Refers to the inmate's status
preceding, during, and following trial.  Enter the appropriate
number in the right-hand column. Note that this number is
subtracted from the total of the preceding items.

**Table 5-6**

| PRECOMMITMENT STATUS | | |
|---|---|---|
| POINTS | STATUS | DEFINITION |
| **0** | Not Applicable | Inmate was not released on Own Recognizance (OR) and did not Voluntarily Surrender. |
| **R** (-3) | Own Recognizance | Award credit for the following: Inmate was released prior to or during the trial period without posting bail or incurring any financial or other type of obligation to ensure appearance. |
| **V** (-3) | Voluntary Surrender | Inmate was not escorted by a law enforcement officer to either the U.S. Marshals Office or the place of confinement.<br><br>This applies only to **post-sentencing** voluntary surrender, and does not include cases where the inmate surrendered to the U.S. Marshals on the same day as sentencing.<br><br>Do not award credit for the following: If there is any indication of bail violation, failure to appear, etc.<br><br>If inmate violated or did not successfully complete release period<br><br>Electronic Monitoring cases or pretrial CCC (bond) placement<br><br>Military inmates who were not confined, but were restricted in movement on the military reservation |

13.  **VOLUNTARY SURRENDER DATE.**  If the court has provided for voluntary surrender, enter the date of the voluntary surrender in this block.  If the court provided for voluntary surrender but did not provide a specific date for the surrender, the CCM shall contact the court to establish a mutually agreeable date.

14.   **VOLUNTARY SURRENDER LOCATION.**   The CCM shall note whether
the inmate is to voluntarily surrender to the USMS or to the
designated institution.

15.   **CRIMINAL HISTORY POINTS.**   Record the criminal history points
as identified in the Criminal History Computation section of the
PSI. (**This is not to be confused with Criminal History Category,
Base Offense Level, or Total Offense Level.**)   Enter the number,
including zero, indicated by the Probation Officer.   If no
criminal history points are provided by the USPO, enter UNK
(unknown) in the space provided.   This is not a scored item
affecting the inmate's security or custody score.   It is
information which will the Bureau's Office of Research and
Evaluation will track and analyze.

16.   **SECURITY POINT TOTAL.**   The sum of items 6 through 12.   Enter
the total in the appropriate block.

17.   **OMDT REFER.**   The Medical Designator, Office of Medical
Designations Transportation (OMDT), must review all cases in
which there is a physical or mental health concern.   Enter "Y"
(yes) or N (no) in this category.   The response will determine
which daily log will reflect the designation information.

18.   **REMARKS.**   Enter relevant information that may have an impact
on the designation process or the transportation of the inmate
(e.g., medical or psychiatric information, substance abuse
history, or arrest behavior with no conviction).   Any item (6-11)
receiving a score greater than zero requires a brief explanation
under the remarks section.   Refer to APPENDIX E, Standard
Abbreviations/Terms.   Also, the individual scoring the case shall
enter his or her initials at the end of the "Remarks" section.

### REGIONAL OFFICE ACTION - INITIAL DESIGNATION

1.   **FACILITY DESIGNATED.**   Enter the mnemonic code for the
institution  designated (Refer to "Enter Initial Designation,"
SENTRY General Use TRM).

2.   **CUSTODY ASSIGNMENT.**   Enter the initial custody assignment in
accordance with Table 5-7.

**Table 5-7**

| LEVEL OF INSTITUTION INITIALLY DESIGNATED | INITIAL CUSTODY ASSIGNMENT |
|---|---|
| Minimum | OUT |
| Low | IN |
| Medium | IN |
| High | IN, unless initial designation is to USP Marion or ADX Florence, in which case the initial custody assignment is MAXIMUM. |
| Administrative | IN, unless inmate is Minimum security level and designation was not for security reasons, in which case the initial custody assignment is OUT. |

3. **DESIGNATOR.**  The Designator shall enter his or her initials.

4. **REASON FOR DESIGNATION.**  This section is used to identify the primary reason for designation.  Below are instructions for entering the appropriate letters which coincide with the designation reason.

- Enter "S" if the inmate's security level is the primary reason for designation and the placement is within normal guidelines.  If "S" is entered, the format will not permit an entry in the "Management Reason," item (5).

- Enter "M" if a Management Variable is the primary reason for designation and placement is outside normal guidelines. When "M" is entered, you must enter the appropriate Management Variable(s) (e.g., B = Judicial Recommendation, D = Release Residence, etc.) under the Management Reason item.  While one MGTV is generally sufficient, a maximum of three MGTVs may be entered into SENTRY.  **In the unlikely event that an inmate's designation facility is inconsistent with his or her MSL, at least one additional non-MSL MGTV must be added to support and explain the inconsistency.**

- When it is necessary to place an inmate at a particular institution temporarily in order to have a parole hearing within certain time limits, a secondary designation is required.  The Violation Hearing Liaison Designator shall notify the Warden of the secondary institution via GroupWise.  Following the hearing, the institution where the

inmate was first placed should review the secondary
designation and contact the Regional Designator if the
results of the hearing indicate that a change in the
secondary designation is required.  An ICC may not be
identified as a secondary designation.

5.  **MANAGEMENT VARIABLES**.  See Chapter 7, pages 9-15.

6.  **REMARKS**.  Enter any relevant information not already recorded
that may have an impact on the designation process or the
transportation of the inmate.

**SECURITY LEVEL GUIDELINES**

Designators may make designations by application of a Management
Variable(s).  Management Variables and the Security Designation
Table are available in Chapter 7.  Every designation outside the
guidelines requires application of a Management Variable.

## INMATE LOAD AND SECURITY DESIGNATION FORM - MALE (BP-337)

| INMATE LOAD DATA | 1. REG NO | | 2. LAST NAME | |
|---|---|---|---|---|

| 3.  FIRST NAME | 4.  MIDDLE | 5.  SUFFIX |
|---|---|---|

| 6.  RACE | 7.  SEX | 8.  ETHNIC ORIGIN | 9.  DATE OF BIRTH |
|---|---|---|---|

10. OFFENSE/SENTENCE

| 11.  FBI NUMBER | 12.  SOCIAL SECURITY NUMBER |
|---|---|

| 13.  STATE OF BIRTH | 14.  OR COUNTRY OF BIRTH | 15.  CITIZENSHIP |
|---|---|---|

| 16.  ADDRESS - STREET | 17.  CITY |
|---|---|

| 18.  STATE | 19.  ZIP CODE | 20.  OR FOREIGN COUNTRY |
|---|---|---|

| 21.  HEIGHT - FT:      IN: | 22.  WEIGHT | 23.  HAIR | 24.  EYES |
|---|---|---|---|

25.  ARS ASSIGNMENT

SECURITY DESIGNATION DATA ////////////////////////////////////////////////////////////////

1.  PUBLIC SAFETY FACTORS
    A - NONE                      F - SEX OFFENDER              I - SENTENCE LENGTH
    B - DISRUPTIVE GROUP          G - THREAT GOVT OFFICIAL      L - SERIOUS ESCAPE
    C - GREATEST SEVERITY         H - DEPORTABLE ALIEN          M - PRISON DISTURBANCE
        OFFENSE                                                 N - JUVENILE VIOLENCE
                                                                O - SERIOUS TELEPHONE ABUSE  *

| 2.  USM OFFICE | 3.  JUDGE | 4.  REC FACILITY | 5.  REC PROGRAM |
|---|---|---|---|

6.  TYPE OF DETAINER      0 - NONE                      3 - MODERATE        7 - GREATEST
                          1 - LOWEST/LOW MODERATE       5 - HIGH

7.  SEVERITY OF CURRENT   0 - LOWEST                    3 - MODERATE        7 - GREATEST
    OFFENSE               1 - LOW MODERATE              5 - HIGH

8.  MONTHS TO RELEASE _____

9.  TYPE OF PRIOR COMMITMENT      0 = NONE        1 = MINOR      3 = SERIOUS

| 10. HISTORY OF ESCAPE | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS |
|---|---|---|---|---|---|---|
| OR ATTEMPTS | MINOR | 0 | 1 | 1 | 2 | 3 |
| | SERIOUS | 0 | 3(S) | 3(S) | 3(S) | 3(S) |

| 11. HISTORY OF | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS |
|---|---|---|---|---|---|---|
| VIOLENCE | MINOR | 0 | 1 | 1 | 3 | 5 |
| | SERIOUS | 0 | 2 | 4 | 6 | 7 |

12. PRECOMMITMENT STATUS 0=NOT APPLICABLE -3(R)=OWN RECOGNIZANCE -3(V)=VOLUNTARY SURRENDER

| 13. VOLUNTARY SURRENDER DATE | 14. VOLUNTARY SURRENDER LOCATION |
|---|---|

| 15. CRIM HX PTS _____ | 16. SECURITY POINT TOTAL |
|---|---|

17. OMDT REFER (Y/N) _____

18. REMARKS

```
┌─────────────────────────────────────────────────────┐
│  PUBLIC SAFETY FACTORS AND MANAGEMENT VARIABLES       │
└─────────────────────────────────────────────────────┘
```

## PUBLIC SAFETY FACTORS

There are certain factors which require increased security measures to ensure the protection of society. Staff shall apply any of the following Public Safety Factors (PSF) that are appropriate. Up to three PSFs may be entered on the Update Security Designation (BP-337). If more than three applicable Public Safety Factors are identified, use those which would most appropriately control the inmate's placement.

**CODE**             **DESCRIPTION - PSF**

A       **NONE**.  No Public Safety Factors apply.

B       **DISRUPTIVE GROUP**.  A **male** inmate who is a validated member of a Disruptive Group identified in the Central Inmate Monitoring System shall be housed in a High security level institution, unless the PSF has been waived.

        **Note:**  At the time of initial designation, if the PSI or other documentation identifies the inmate as a possible member of one of the Central Inmate Monitoring Disruptive Groups, Community Corrections (CC) staff shall indicate a PSF on the BP-337.  However, CC staff shall not enter the CIM assignment "Disruptive Group."  Upon loading this PSF on a not-yet-validated member, CC staff shall 1) make a notation in the remarks section to indicate the need for validation upon arrival at the institution, and  2) notify the Central Office Intelligence Section, via GroupWise, to advise them of the inmate's status.  Upon the inmate's arrival at the designated institution, the intake screener shall notify the institution's Special Investigation Supervisor (SIS) of the inmate's PSF, in order to begin the validation process.

C       **GREATEST SEVERITY OFFENSE**.  A **male** inmate whose current term of confinement falls into the "Greatest Severity" range according to the Offense Severity Scale  (Appendix B) shall be housed in at least a Low security level institution, unless the PSF has been waived.

```
╔══════════════════════════════════════════════════════════════╗
║  CUSTODY CLASSIFICATION FORM INSTRUCTIONS - MALE (BP-338)     ║
╚══════════════════════════════════════════════════════════════╝
```

### INTRODUCTION

Custody classification is a procedure whereby inmates are assigned levels according to their criminal histories and institutional behavior/adjustment. An inmate's custody level is an indication of how much staff supervision is required for an inmate within and beyond the confines of the institution.

An inmate's initial custody classification shall be scored at the first program review following initial classification (approximately 7 months after arrival at an institution). Subsequent reviews shall occur at least every 12 months, but may be conducted earlier in order to enable progress toward community activities. Custody classification shall ordinarily occur in conjunction with every second program review.

Ordinarily, an inmate's security level and custody level shall be reviewed following any new sentence or sentence reduction, or any time a change in external factors or disciplinary action might affect the security or custody level.

When transferring to another institution, inmates normally retain their custody assignments. If the custody level is inconsistent with that authorized at the receiving institution, the sending institution shall change the inmate's custody prior to transfer. Holdovers shall retain their custody level assignments until received at the designated institution.

At each annual custody review, a new Custody Classification Form shall be completed, even though the scoring elements may not have changed from the previous form. Only the most current Custody Classification Form shall be retained in the Inmate Central File, except for those forms that must be retained to document appropriate review and approval for custody reductions (e.g., custody reductions for exception cases require the Warden, or designee, to sign the Custody Classification Form. The form should be maintained to document the review and approval). As set forth in the definition of maximum custody, Chapter 2, a BP-338 form changing custody to or from maximum custody must be permanently maintained.

It should be clearly understood that the Custody Classification Form only recommends an inmate's custody. The unit team and/or Warden is the final review authority. The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines. Custody changes are not dictated by the point total. However, when the unit team decides not to follow the recommendation of the point total, they must

document the reason(s) for this decision in writing on the
custody review form, and inform the inmate.

### SECTION A - IDENTIFYING DATA

1.  **INSTITUTION CODE.**   (Automatically displayed by SENTRY.)

2.  **UNIT.** (Automatically displayed by SENTRY.)

3.  **DATE.** (Automatically displayed by SENTRY.)

4.  **NAME.** (Automatically displayed by SENTRY.)

5.  **REGISTER NUMBER.** (Automatically displayed by SENTRY.)

6.  **CRIMINAL HISTORY POINTS.**  If points were entered on the
BP-337, they should transfer over to the BP-338, if the item is
blank, a manual entry must be made.  Record the criminal history
points as identified in the Criminal History Computation section
of the PSI.  (**This is not to be confused with Criminal History
Category, Base Offense Level, or Total Offense Level.**)  Enter the
number, including zero, indicated by the Probation Officer.  If
no criminal history points are provided by the USPO, enter
unknown (UNK) in the space provided.  This is not a scored item
affecting the inmate's security or custody score.  It is
information which the Bureau's Office of Research and Evaluation
will track and analyze.

7.  **MANAGEMENT VARIABLES.**  See Chapter 7, pages 9-15.

8.  **PUBLIC SAFETY FACTORS.** See Chapter 7, pages 1-8.

### SECTION B - BASE SCORING

1.  **TYPE OF DETAINER.**  Enter the appropriate number of points in
the box in the right-hand column to reflect detainer status.
Refer to the Offense Severity Scale (Appendix B).  If multiple
detainers have been filed, enter the point value for the most
serious charge.  Frequency and sentence length are not
considered.

The scoring of detainers on the Update Security Designation
(BP-337) may differ from the score received on the Custody
Classification Form (BP-338).  If there is a pending charge,
points based on the documented behavior are assigned on the type
of detainer item; if the pending charge involves a probation
violation, use the most severe documented behavior in the
original offense as the basis for assigning points in the

PS 5100.07
9/3/99
Appendix B, Page 1

```
OFFENSE SEVERITY SCALE
```

## GREATEST SEVERITY

**Aircraft Piracy** - placing plane or passengers in danger
**Arson** - substantial risk of death or bodily injury
**Assault** - serious bodily injury intended or permanent or
    life threatening bodily injury resulting)
**Car Jacking** - any
**Drug Offense** - see criteria below*
**Escape** - closed institution, secure custody, force or
    weapons used
**Espionage** - treason, sabotage, or related offenses
**Explosives** - risk of death or bodily injury
**Extortion** - weapon or threat of violence
**Homicide or Voluntary Manslaughter** - any
**Kidnaping** - abduction, unlawful restraint, demanding or
    receiving ransom money
**Robbery** - any
**Sexual offenses** - rape, sodomy, incest, carnal knowledge,
    transportation with coercion or force for commercial
    purposes
**Toxic Substances/Chemicals:** - weapon to endanger human life
**Weapons** - distribution of automatic weapons, exporting
    sophisticated weaponry, brandishing or threatening use of
    a weapon

\*    Any **drug offender** whose current offense includes the following
    criteria shall be scored in the Greatest severity category:

    The offender was part of an organizational network and he or she
    organized or maintained ownership interest/profits from **large-scale**
    drug activity,

                         ***AND***

    the drug amount equals or exceeds the amount below:

    **Cocaine** - greater than or equal to 10,000 gm, 10 K, or  22 lb
    **Cocaine Base "Crack"** - greater than or equal to 31 gm
    **Hashish** - greater than or equal to 250,000 gm, 250 K, or 551 lb
    **Marijuana** - greater than or equal to 620,000 gm, 620 K, or 1,367 lb
    **PCP** - greater than or equal to 100,000 mg, 100 gm, or 20,000 dosage
    units
    **Heroin or Opiates** - greater than or equal to 2,000 gm, 2 K, or 4.4 lb
    **Methamphetamine** - greater than or equal to 16,000 gm, 17 K, or 35 lbs
    **Other illicit drugs:** - Amphetamine, Barbiturates, LSD, etc. greater
    than or equal to 250,000 dosage units

SECURITY/DESIGNATION                    *       07-20-2005
                                                    0:10:03
        REGNO: 22989-038    NAME: KARAGELIDIS, ANGELO                    ORG: CBN
RC/SEX/AGE: W/M/34   FORM D/T: 09-30-2002/1502   RES: DEDHAM, MA 02026
OFFN/CHG..: 21 USC 841/846: CONSPIRACY TO DISTRIBUTE ECSTASY, 84 MOS
            CBOP W/3 YRS SR   (2:00-CR-11-01)
CUSTODY...: IN          BIL:          CR HX PT: 0     CAR: CARE2
CITIZENSHP: UNITED STATES OF AMERICA  PUB SAFETY: GRT SVRTY
CIM CONSID:                                           USM: BUR
JUDGE.....: SESSIONS     REC FACL: LOW SECURITY     REC PROG: 500HR RDAP
DETAINER..: NONE         SEVERITY: GREATEST         MOS REL.: 040
PRIOR.....: NONE         ESCAPES.: NONE             VIOLENCE: NONE
PRECOMMT..: N/A          V/S DATE:                  V/S LOC.:
OMDT REF..: NO           SEC TOT.: 7                SCORED LEV: LOW
CCM RMKS..: SUBJ ORG/LDR OF DRUG SMUGGLE OPERATN IN AMSTERDAM W/SHIPMENTS
            OF ECSTASY HIDDEN IN COSMETIC JARS SENT TO U.S.- RSP 2,400 K
            MARIJ EQUIV. PR/PD:NONE. MED:HYPOTHYROID W/MEDS;CHEST NODULES.
            PSY:DEPRESS W/MED.'00 INVOL IN ESCAPE PLOT FM NWSCF(C PSI). PM
DESIG: DEVENS FMC-LOW (M)        NER TEW 09-30-2002 RSN: LEVEL  MSL:
MGTV/MVED.:
DESIG RMKS: JUD REC FOLLOWED
            CANCEL DST FTD GP, DES DEV LOW DUE TO PRIOR ESCAPE CONCERNS

G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

| TO: (Community Corrections Manager) | FROM: Chief Executive Officer (Name, Title & Date) - Signature certifies approval and CIMS Clearance |
|---|---|
| David Dwyer, CCM | David L. Winn, Warden |

| Inmate Name | Register Number | Date |
|---|---|---|
| KARAGELIDIS, Angelo | 22989-038 | May 12, 2005 |

| Unit Manager/Mail ID | Institution (Address and Phone Number) |
|---|---|
| Tony Calabro | Federal Medical Center, Devens<br>P.O. Box 880<br>Ayer, MA 01432<br>(978) 796-1000 |

| 1. Release City | Supervision District |
|---|---|
| Dedham, MA | District of Massachusetts |

| 2. Anticipated Release Date | Method | Verified by (ISM Staff) |
|---|---|---|
| March 10, 2006 | Good Conduct Time Release | Steve Gagnon, ISM |

| 3. Recommended (only one):<br>a. Range_____, or<br>b. Date:_____September 9, 2005_____<br>(Pre-Release Preparation date) | 4. If a presumptive parole case, enter the date the pre-release record review progress report was submitted to the Parole Commission: N/A |
|---|---|

| 5. Statutory Interim Hearing Scheduled?<br>_ Yes  X No  _ Waived | 6. Supervised Release<br>X Yes _ No | Special Parole Term<br>_ Yes X No |
|---|---|---|

7. Aftercare Supervision
X Drug    X Alcohol    X Mental Health    Other:

8. CIM Case: X Yes __No    Assignment: Separation

As CMC, I have reviewed the Request for Activity Clearance (404) and the SENTRY CIM Clearance and Separatees Data and I recommend the inmate be considered for CCC placement and clearance be granted by the Warden.

____Yes    No    Signature of CMC_____

Upon signature of the Warden, I will update SENTRY to reflect CCC referral for range/date as listed in item 3 above.

NOTE:
The CMC will update SENTRY to reflect specific dates and CCC location code upon notification of acceptance from the CMC.

| 9. If proposed District of Supervision differs from Sentencing District, has USPO approved?<br>XX Yes _ No _ N/A | 10. Does inmate have a financial obligation? Yes XX NO<br>If yes, indicate type and how obligation will be paid in item 12. |
|---|---|

11. Additional Information, including status of any detainers or pending charge(s) and whether there is a substance abuse history.

Mr. Karagelidis has no known pending charges or detainers.

According to his PSI, "Mr. Karagelidis described being a social drinker that consumed alcohol approximately once per week. He reported having experimented with marijuana in college and estimated having used it five times. He reported a short use of cocaine in 1996 and indicated that he used Ecstacy "a lot" but declined to elaborate. He also reported having used growth hormone steroids. He advised having never having received drug or alcohol counseling of any type.

12. Specific release preparation/Pre-natal care needs.

Mr. Karagelidis was ordered by the court to pay a Special Assessment of $100. He fulfilled this obligation via the inmate Financial Responsibility Program on September 6, 2003.

The Unit Team is of the opinion Mr. Karagelidis will need a CCC placement to aid his lawful society reintegration as he will require assistance seeking gainful employment. Mr. Karagelidis has expressed a desire to participate in such a placement.

The Unit Team is recommending a placement date commensurate with his Pre-release Preparation date of September 9, 2005.

| 13. For MINT Referrals, Date of Delivery: | 14. (a) For MINT Referrals, Projected Date of Return to Parent Institution:<br>(B) Proposed guardian: |
|---|---|

| TO BE FORWARDED WITH THE REFERRAL FORM | NO. COPIES | TO BE FORWARDED TO THE REGIONAL TSM | NO. COPIES |
|---|---|---|---|
| BP-S210, Referral Form | 2 | BP-S210, Referral Form | 1 |
| Current Progress Report | 2 | Current Progress Report | 2 |
| Pre-sentence Report/Violation Report | 2 | Treatment Summary and Referral Form | 2 |
| Community Based Program Agreement | 2 | Drug Abuse Treatment Programs Agreement to | |
| BP-339 CIM Case Information Summary | 1 | Participate in Community Transition Programming | 2 |
| (Non-Separation Cases) | | | |
| USPO Acceptance Letter | 2 | | |
| Copy of Latest Notice of Action | 2 | | |
| BP-351 Medical Evaluation for Transfer of | 2 | | |
| Inmates to CCC Type Facility | | | |
| Judgment & Commitment Order | 2 | | |
| Statement of Responsibility | 2 | | |

* If the inmate has a diagnosed, ongoing medical condition, such as diabetes or coronary disease, send any pertinent medical records.

Record Copy - CCM; Copy - Institution File; Copy - USPO Sentencing District; Copy USPO District of Supervision
(This form may be replicated via WP)                                    This form replaces BP-210 November 1995

mailed 5/17/05

```
        FUNCTION: LST SCOPE  REG    EQ 22989-038    OU1_JT FORMAT: SAN_____
-------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW---------
DT RCV: FROM _____   THRU _____   DT STS: FROM _____   THRU _____
DT STS: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT RDU
DT TDU: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: _____ _____ _____ _____ _____ _____ _____ _____
EXTENDED: _ REMEDY LEVEL: _ _            RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ ____      ___      ___      ___      ___      ___
TRACK:  DEPT: _____    ___      ___      ___      ___      ___
      PERSON: ___      ___      ___      ___      ___      ___
        TYPE: ___      ___      ___      ___      ___      ___
EVNT FACL: EQ ____     ___      ___      ___      ___      ___
RCV FACL.: EQ ____     ___      ___      ___      ___      ___
RCV UN/LC: EQ _____    _____    _____    _____    _____    _____
RCV QTR..: EQ _____    _____    _____    _____    _____    _____
ORIG FACL: EQ ____     ___      ___      ___      ___      ___
ORG UN/LC: EQ _____    _____    _____    _____    _____    _____
ORIG QTR.: EQ _____    _____    _____    _____    _____    _____


G0002        MORE PAGES TO FOLLOW . . .
```

Case 1:05-cv-11846-NG   Document 17   Filed 01/20/2006   Page 2 of 2

| REMEDY-ID | SUBJ1/SUBJ | | | | |
|---|---|---|---|---|---|
| | RCV-OFC | RCV-FACL | DATE-RCV | STATUS | STATUS-DATE |
| 321615-F1 | 13IM/ | REQUESTS PSF BE REMOVED | | | |
| | DEV | DEV | 01-06-2004 | REJ | 01-12-2004 |
| 321615-F2 | 13IM/ | REQUESTS PSF BE REMOVED | | | |
| | DEV | DEV | 01-16-2004 | CLD | 01-29-2004 |
| 321615-R1 | 13IM/ | REQUESTS PSF BE REMOVED | | | |
| | NER | DEV | 02-17-2004 | CLD | 03-16-2004 |
| 321615-A1 | 13IM/ | REQUESTS PSF BE REMOVED | | | |
| | BOP | DEV | 04-19-2004 | REJ | 04-19-2004 |
| 321615-A2 | 13IM/ | REQUESTS PSF BE REMOVED | | | |
| | BOP | DEV | 05-17-2004 | CLD | 07-13-2004 |

```
                    5 REMEDY SUBMISSION(S) SELECTED
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

       FUNCTION: LST SCOPE  REG   EQ 22989-038    OU1 JT FORMAT: SAN_____
-------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
DT STS: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT RDU
DT TDU: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: _____ _____ _____ _____ _____ _____ _____ _____
EXTENDED: _ REMEDY LEVEL: _ _      _ _ _  RECEIPT: _ _ _  "OR" EXTENSION: _ _ _
RCV  OFC : EQ ____      ___      ___      ___      ___      ___
TRACK:  DEPT: _____   _____   _____   _____   _____   _____
      PERSON: ___     ___     ___     ___     ___     ___
        TYPE: ___     ___     ___     ___     ___     ___
EVNT FACL: EQ ___     ___     ___     ___     ___     ___
RCV FACL.: EQ ____    ___     ___     ___     ___     ___
RCV UN/LC: EQ _____   _____   _____   _____   _____   _____
RCV QTR..: EQ _____   _____   _____   _____   _____   _____
ORIG FACL: EQ ___     ___     ___     ___     ___     ___
ORG UN/LC: EQ _____   _____   _____   _____   _____   _____
ORIG QTR.: EQ _____   _____   _____   _____   _____   _____


G0002      MORE PAGES TO FOLLOW . . .

DEVAA            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-18-2006
PAGE 002  OF ...

Case 1:05-cv-11846-NG   Document 8   Filed 01/20/2006   Page 2 of 2

PAGE 002                                                              12:56:56

| REMEDY-ID | SUBJ1/SUBJ | | | | |
|-----------|------------|----------|---------------------|--------|-------------|
| | RCV-OFC | RCV-FACL | DATE-RCV | STATUS | STATUS-DATE |
| 321615-F1 | 13IM/ | REQUESTS PSF BE REMOVED | | | |
| | DEV | DEV | 01-06-2004 | REJ | 01-12-2004 |
| 321615-F2 | 13IM/ | REQUESTS PSF BE REMOVED | | | |
| | DEV | DEV | 01-16-2004 | CLD | 01-29-2004 |
| 321615-R1 | 13IM/ | REQUESTS PSF BE REMOVED | | | |
| | NER | DEV | 02-17-2004 | CLD | 03-16-2004 |
| 321615-A1 | 13IM/ | REQUESTS PSF BE REMOVED | | | |
| | BOP | DEV | 04-19-2004 | REJ | 04-19-2004 |
| 321615-A2 | 13IM/ | REQUESTS PSF BE REMOVED | | | |
| | BOP | DEV | 05-17-2004 | CLD | 07-13-2004 |

              5 REMEDY SUBMISSION(S) SELECTED
G0000     TRANSACTION SUCCESSFULLY COMPLETED

# REQUEST FOR ADMINISTRATIVE REMEDY

U.S. Department of Justice
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Karagelidis, Angelo | 41594-035 | A-A | FMJ Devens |
|-------|------------------------------|-----------|------|------------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

Please see attached:

                     Part I: Request
                     Part II: Attachment A (PS5100.07, Chap. 7,Pg.6)
                     Part III: Previous Correspondence (Attach. B)

_12/29/03_
DATE

_____
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED
JAN – 6 2004
FMC DEVENS
WARDEN'S OFFICE

_____  _____
DATE                         WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE**

CASE NUMBER: _____

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____  _____
DATE                         RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982

USP LVN

Pursuant to our conversation on December 12, 2003, I am willing in hope that you will help me, as you'd state, by recommending that the region consider removal of my PSF for "greatest severity", **via filing a GroupWise form EMS 409**, as per PS 5100.07, Chapter 7, Page 6A (copy enclosed, see *Attachment A*).

I have enclosed all previous correspondence\copouts outlining my previous endeavors to effect this outcome (see *Attachment B*).

I hope to merit this waiver based on my institutional adjustment, rehabilitative endeavors/volunteer work, perfect disciplinary record while in F.B.O.P. custody, time left to serve on my sentence (25 months left to serve on 84 month sentence) and clear criminal history/offense record (first time non-violent offender).

I am continuing to strive to earn this waiver by actively engaging in copious rehabilitative & volunteer activities while incarcerated here at FMC Devens. I have completed several extensive computer-animated tutorials/instructional presentations (MS Office based) to aid in the instruction of GED subject matter, that I'd begun work on last year upon my arrival here at FMC Devens. These easy-to-use, efficient computer tutorials have been incorporated into the computer based GED curriculum and are available for use by inmates as supplementary instructional aids on the Education Department's computers. It is my intent to develop -in conjunction with the students that will participate in the upcoming VT Computer Aided Graphic Arts program which I will tutor- even more sophisticated versions of these tutorials that may be used by other federal prisons. I've also helped to create a computer-based student tracking system for the VT Computer Courses and GED using available MS Office applications that facilitates entry and maintenance of student performance information.

In addition to these "live-work" projects, I'm continuing to work arduously as a tutor, instructor and clerk in the education department here at FMC Devens. I tutor GED and assist in Vocational Training Computer Classes under the supervision of Mr. James Boyack during the day, and I instruct Adult Continuing Education (A.C.E.) courses on a volunteer basis at night -in addition to functioning as clerk, on a volunteer basis, for the A.C.E. program (thus eliminating a formerly paid position). To date, I've instructed Adult Continuing Education course's in Physics, Algebra, and Basic Electronics, for which I've created extensive instructional aids & computer animated presentations that can be utilized by inmate instructors wishing to teach these courses here at FMC Devens in the future. As A.C.E. clerk I primarily assist instructors in the creation of curriculums, help administer course schedules and room assignments, aid in management of student data/rosters, and aid in the promotion and "advertisement" of A.C.E. and other educational programs to the inmate population.

Moreover, to supplement my own education and further rehabilitate myself I participate in numerous Adult Continuing Education and self-study courses as a student (ranging in subject area from Business Management to Computer Graphics) and have completed the forty-hour non-residential drug treatment program offered here at FMC Devens. I anticipate I will have earned approximately 24 Adult Continuing Education credits by the time this request receives consideration.

I also work in the area of "pre-release", where I've helped the education staff with the successful setup and execution of the 2003 FMC Devens "Mock Job Fair" through the preparation of student resumes, creation of related pamphlets and literature, and setup/decoration of the department. In addition, I assist counselor David Premsingh with the instruction of pre-release classes in "Personal Finance" and "Basic Employment" that he offers to inmates here at FMC Devens.

In closing, I wish to submit some final, pertinent facts about my personal history and record while incarcerated in the F.B.O.P in support of my request for a waiver of my PSF. Foremost, I've maintained a perfect disciplinary record while in F.B.O.P. custody, never having received any disciplinary reports or been subject to disciplinary action of any kind. I am also a first-time, non-violent offender whose history is unblemished by any criminal conduct whatsoever prior to the instant offense for which I am incarcerated. To the contrary, as my P.S.I.R. reflects, I had led a law-abiding and highly productive life as a respected member of my community prior to the instant offense. I graduated Summa Cum Laude, from Tufts University in Boston with a B.S. in Mechanical Engineering and completed one year of graduate work towards my MD degree at Tufts University School of Medicine. I'd worked in the defense industry as a mechanical engineer -with D.o.D. clearance- at General Electric in Lynn, MA and have also owned my own business. Candidly, in consideration of all the relevant data I hardly feel that I represent the kind of threat to the community that the imposition of a Public Safety Factor for "greatest severity" is utilized to indicate. Contrary to posing the "threat" to the safety and well being of my community that this variable suggests, I plan to continue with the positive, constructive course of rehabilitation on which I've embarked during the remainder (19-25 months, depending on half-way house placement) of my incarceration and, upon release, return to the being the productive, contributing member of my community that I'd been before I took the short-lived, though admittedly very serious, criminal detour in my life for which I am incarcerated.

I greatly appreciate your time spent in consideration of my request.

Respectfully,

Angelo Karagenidis

1/13/04
resubmitted

FEDERAL MEDICAL CENTER, DEVENS, MASSACHUSETTS
RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY #321615-F2

This is in response to your Request for Administrative Remedy in which you request that your "Greatest Severity Offense" Public Safety Factor (PSF) be removed. You state that you believe you have earned this waiver based upon your continued rehabilitative efforts, good institutional adjustment and perfect disciplinary record.

Investigation of your request revealed the following. You are currently serving an 84 month sentence for violation of 21 U.S.C. § 841 and 846, Conspiracy to Distribute Ecstacy. Your Presentence Investigation Report reveals that you were part of an organized network and maintained a leadership role in an organization that profited from large-scale drug activity.

Pursuant to Program Statement 5100.07, Security Designation and Custody Classification Manual, Chapter 7, Page 1, PSFs "are certain factors which require increased security measures to ensure the protection of society." The "Greatest Severity Offense" PSF is applied to "a male offender whose current offense falls into the 'Greatest Severity' range according to the offense Severity Scale (Appendix B)." Id. According to Appendix B, Page 1, Drug Offense falls into the Greatest Severity category when a drug offender "maintained ownership interest/profits from large-scale drug activity." In addition, you also meet the criteria set forth in this document in terms of the amount of drugs involved in your offense. Therefore, the Greatest Severity Offense PSF has been properly applied to you because you meet the above criteria.

Based upon the above facts, your Request for Administrative Remedy is denied.

If you are not satisfied with this decision, you may appeal to the Regional Director at Bureau of Prisons, Northeast Regional Office, U.S. Customs House, 7th Floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania 19106. Your appeal must be received in the Northeast Regional Office within 20 days of the date of this response.

_____                    _1-29-04_____
David L. Winn, Warden                                              Date

U.S. Department of Justice
Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: ___Karagelidis, Angelo___ ___22989-038___ ___G-A___ ___F.M.C. Devens___
LAST NAME, FIRST. MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A—REASON FOR APPEAL**

Please see attached;

Part II. Request

Part II. Previous correspondence

___2/10/04___
DATE

___SIGNATURE OF REQUESTER___

**Part B—RESPONSE**

___DATE___    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE    CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST. MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

USP LVN    DATE    Previous editions not usable    SIGNATURE, RECIPIENT OF REGIONAL APPEAL    BP-230(13)
APRIL 1982

Subsequent to my being told at my unit team meeting (by caseworker Patricia Jenkinson) that the waiver of a public safety factor is a matter **decided/handled at the regional level**, and my further researching the issue, I spoke with my unit team manager (Tony Collabro) requesting that my team submit a **groupwise form 409** on my behalf so that the **region might consider this waiver**. I was told by my Mr. Collabro that he would certainly recommend a waiver, and further that he would in fact ''remove it in a heartbeat'' based on my institutional adjustment and record at Devens **''if it were up to him.''** He then instructed me to file my request for a waiver to him formally in the form of a BP-9 (I had filed my initial requests via the 8, 81/2's).

Unfortunately my BP-9, rather than resulting in a **groupwise form EMS 409** being sent **to the region** so that the possibility of a **waiver** might be considered, my request for a **waiver**, which was sent to the Wardens office, resulted in my receiving a response explaining the reasons for the initial imposition of the PSF.

I am thus submitting this BP-10 in hope that the **region** will consider the waiver of my PSF.

I hope to merit this waiver based on my institutional adjustment, rehabilitative endeavors/volunteer work, perfect disciplinary record while in F.B.O.P. custody, time left to serve on my sentence (24 months left to serve on 84 month sentence) and clear criminal history/offense record (first time non-violent offender).

I am continuing to strive to earn this waiver by actively engaging in copious rehabilitative & volunteer activities while incarcerated here at FMC Devens. I have completed several extensive computer-animated tutorials/instructional presentations (MS Office based) to aid in the instruction of GED subject matter, that I'd begun work on last year upon my arrival here at FMC Devens. These easy-to-use, efficient computer tutorials have been incorporated into the computer based GED curriculum and are available for use by inmates as supplementary instructional aids on the Education Department's computers. It is my intent to develop -in conjunction with the students that will participate in the upcoming VT Computer Aided Graphic Arts program which I will tutor- even more sophisticated versions of these tutorials that may be used by other federal prisons. I've also helped to create a computer-based student tracking system for the VT Computer Courses and GED using available MS Office applications that facilitates entry and maintenance of student performance information.

In addition to these ''live-work'' projects, I'm continuing to work arduously as a tutor, instructor and clerk in the education department here at FMC Devens. I tutor GED and assist in Vocational Training Computer Classes under the supervision of Mr. James Boyack during the day, and I instruct Adult Continuing Education (A.C.E.) courses on a volunteer basis at night -in addition to functioning as clerk, on a volunteer basis, for the A.C.E. program (thus eliminating a formerly paid position). To date, I've instructed Adult Continuing Education course's in Physics, Algebra, and Basic Electronics, for which I've created extensive instructional aids & computer animated presentations that can be utilized by inmate instructors wishing to teach these courses here at FMC Devens in the future. As A.C.E. clerk I primarily assist instructors in the creation of curriculums, help administer course schedules and room assignments, aid in management of student data/rosters, and aid in the promotion and ''advertisement'' of A.C.E. and other educational programs to the inmate population.

Moreover, to supplement my own education and further rehabilitate myself I participate in numerous Adult Continuing Education and self-study courses as a student (ranging in subject area from Business Management to Computer Graphics) and have completed the forty-hour non-residential drug treatment program offered here at FMC Devens. I anticipate I will have earned approximately 24 Adult Continuing Education credits by the time this request receives consideration.

I also work in the area of ''pre-release'', where I've helped the education staff with the successful setup and execution of the 2003 FMC Devens ''Mock Job Fair'' through the preparation of student resumes, creation of related pamphlets and literature, and setup/decoration of the department. In addition, I assist counselor David Premsingh with the instruction of pre-release classes in ''Personal Finance'' and ''Basic Employment'' that he offers to inmates here at FMC Devens.

In closing, I wish to submit some final, pertinent facts about my personal history and record while incarcerated in the F.B.O.P in support of my request for a waiver of my PSF. Foremost, I've maintained a perfect disciplinary record while in F.B.O.P. custody, never having received any disciplinary reports or been subject to disciplinary action of any kind. I am also a first-time, non-violent offender whose history is unblemished by any criminal conduct whatsoever prior to the instant offense for which I am incarcerated. To the contrary, as my P.S.I.R. reflects, I had led a law-abiding and highly productive life as a respected member of my community prior to the instant offense. I graduated Summa Cum Laude, from Tufts University in Boston with a B.S. in Mechanical Engineering and completed one year of graduate work towards my MD degree at Tufts University School of Medicine. I'd worked in the defense industry as a mechanical engineer -with D.o.D. clearance- at General Electric in Lynn, MA and have also owned my own business. Candidly, in consideration of all the relevant data I hardly feel that I represent the kind of threat to the community that the imposition of a Public Safety Factor for ''greatest severity'' is utilized to indicate. Contrary to posing the ''threat'' to the safety and well being of my community that this variable suggests, I plan to continue with the positive, constructive course of rehabilitation on which I've embarked during the remainder (17-23 months, depending on half-way house placement) of my incarceration and, upon release, return to the being the productive, contributing member of my community that I'd been before I took the short-lived, though admittedly very serious, criminal detour in my life for which I am incarcerated.

I greatly appreciate your time spent in consideration of my request.

**KARAGELIDIS, Angelo**
Reg. No.   22989-038
Appeal No.   321615-R1
Page One

---

### Part B - Response

You appeal the decision of the Warden at FMC Devens to deny your
request for waiver of your Greatest Severity Public Safety Factor
(PSF).   You contend you have earned a waiver of your PSF based
upon your rehabilitative efforts, good institutional adjustment
and disciplinary record.

Our review of your appeal revealed that the PSF of Greatest
Severity was properly applied to you since you were served in a
leadership role in an organization involved in large scale drug
activity.   While your continued positive institutional adjustment
is noted, we do not find the factors you present to warrant a
waiver of your PSF at this time.   Accordingly, your appeal is
denied.

If you are dissatisfied with this response, you may appeal to the
General Counsel, Federal Bureau of Prisons.   Your appeal must be
received in the Administrative Remedy Section, Office of General
Counsel, Federal Bureau of Prisons, 320 First Street, N.W.,
Washington, D.C. 20534, within 30 calendar days of the date of
this response.

Date: March 16, 2004                     D. SCOTT DODRILL
                                         Regional Director

U.S. Department of Justice

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Karagelidis, Angelo      22989-038      G-2      FMC Devens
        LAST NAME, FIRST, MIDDLE INITIAL      REG. NO. #      UNIT      INSTITUTION

**Part A—REASON FOR APPEAL**    1. Request; 2. Attachment A - Excerpts from PS 5100.07
                              3. Attachment B - Past Correspondence

I am appealing the denial of a waiver of my "PSF for Greatest Severity" based
on the following:

    a. I feel that I merit a waiver based on my (1) perfect disciplinary/insti-
       tutional record while incarcerated; (2) institutional adjustment; and
       (3) my work to aid the FMC Devens Education Department, the inmates at
       FMC Devens, and thus, the FBOP.
    b. The fact that I was only given a +2 -rather than a +4- point enhancement
       for my role in the conspiracy in accordance with that I was not the
   conspiracy leader. In fact, the PSIR clearly indicates that the conspiracy's
       leader/organizer was George Lammers.
    c. The fact that the 311,000 "ecstasy" pills alleged to have been distributed
       in the conspiracy were imputed to a large group of people (of which I was
       but one), and that I was not personally responsible, according to the
   information in my PSIR, for the distribution of "over 250,000 dosage units"
       - the requirement, in addition to being "organizer/leader", for the
       imposition of a PSF for greatest severity. (see attachment A)

5/11/04           (cont. on attached sheet)
DATE                                              SIGNATURE OF REQUESTER

**Part B—RESPONSE**

 

DATE                                         GENERAL COUNSEL

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE       CASE NUMBER: 231115

**Part C—RECEIPT**

                                           CASE NUMBER:

Return to:
        LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT:

DATE                 SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
APRIL 1982

Administrative Remedy No. 321615-A2
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal in which you claim the Greatest Severity Public Safety
Factor (PSF) is not applicable to your case. You request a
waiver of your Greatest Severity Public Safety Factor (PSF).

Our review reveals the Warden and Regional Director adequately
and thoroughly responded to the issues raised in your appeal.
The application of PSFs is within the authority of the Warden and
Regional Director per Program Statement (P.S.) 5100.07, Security
Designation and Custody Classification Manual. This P.S. states
the Greatest Severity PSF shall be applied when an inmate's
current offense falls into the Greatest Severity range according
to the Offense Severity Scale. P.S. 5100.07 also states that the
Greatest Severity PSF shall be applied for a drug offense where
the offender was part of an organizational network and he or she
organized or maintained ownership interest/profits from large-
scale drug activity and the marijuana amount was greater than or
equal to 620 kilograms.

Your Presentence Investigation Report (PSI) indicates you were an
organizer, leader, manager, or supervisor in a drug trafficking
organization responsible for the distribution of the Ecstasy
pills equivalent to that of 2,614.08 kilograms of marijuana.
Therefore, we find the application of the Greatest Severity PSF
appropriate and in accordance with policy.

Your appeal is denied.

_____
July 13, 2004
Date

_____
Harrell Watts, Administrator
National Inmate Appeals